## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **CBC RESTAURANT CORP.**, *et al.*,[1] | Case No. 23-10245-KBO |
| Debtors. | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS: (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS, AND (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO; AND (II) GRANTING RELATED RELIEF**

CBC Restaurant Corp. and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, "Corner Bakery" or the "Debtors"), respectfully state the following in support of this motion (the "Motion").

## RELIEF REQUESTED

1.    Corner Bakery seeks entry of interim and final orders: (a) authorizing, but not directing, the Debtors to (i) continue to operate their existing cash management systems, as further described below (the "Cash Management Systems"), including maintenance of the Debtors' existing bank accounts, checks, business forms; (b) honor certain prepetition obligations related thereto; and (ii) granting related relief. A proposed form of order granting the relief requested on an interim basis is attached hereto as **Exhibit A** (the "Interim Order"), and a proposed form of order granting the relief requested on a final basis is attached hereto as **Exhibit B** (the "Final Order").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include CBC Restaurant Corp. (0801), Corner Bakery Holding Company (3981), and CBC Cardco, Inc. (1938).  The Debtors' service address is 121 Friends Land, Suite 300, Newtown PA 18940.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of* Reference from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.).

3.      The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BASIS FOR RELIEF

5.      The statutory bases for the belief requested herein are sections 105(a), 345, 363(b), 363(c)(1), and 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 2002, 6003, and 6004 , and Local Rules 2002-1 and 9013-1.

## BACKGROUND

### A.  The Business and Events Leading to These Bankruptcy Filings

6.      Corner Bakery is a fast-casual restaurant serving kitchen-crafted breakfast, lunch, and dinner and catering to guests. Its restaurants have been a neighborhood favorite since the brand was established in 1991. The original American Italian bakery cafe was founded on a philosophy

of creating a warm and comfortable place for people to relax with friends, family, and neighbors. Today, the restaurant features artisan-inspired, seasonal menu options made with fresh ingredients, while delivering a premier bakery cafe experience in the heart of neighborhoods and urban markets across California, Texas, Pennsylvania, Illinois, Virginia, Maryland, and the District of Columbia.

7.     A detailed description of Corner Bakery's business and the facts and circumstances supporting this Motion as well as the events leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Jignesh Pandya, Chief Executive Officer and Chief Operating Officer of Corner Bakery, in Support of Chapter 11 Petitions and Certain First Day Emergency Motions* (the "<u>First Day Declaration</u>") that is being filed contemporaneously with this Motion.

8.     The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

**B.  Corner Bakery's Cash Management System.**

9.     Before the commencement of the Chapter 11 Cases, and in the ordinary course of business, the Debtors historically implemented and maintained a cash management system (the "<u>Cash Management System</u>") to facilitate the efficient operation of their business and operations. The Debtors use the Cash Management System in the ordinary course of business to collect, transfer, and disburse funds generated from their operations.

*[Remainder of Page Intentionally Left Blank]*

## 1. The Bank Accounts

10.     The Cash Management System is comprised of bank accounts at Key Bank, Citizens Bank, and Bank of America (together with any accounts opened after the Petition Date, the "Bank Accounts" and each, a "Bank Account"), which include the following:

    a.  Key Bank Operating Account No. 388-613-67XXXX (NO DACA):

    b.  Key Bank Payroll/Expense Account No. 388-613-67XXXX (NO DACA);

    c.  Citizens Bank Operating Account No. 631251XXXX (DACA);

    d.  Citizens Expense Account No. 631251XXXX (DACA);

    e.  Citizens Merchant Account No. 631251XXXX (DACA); and

    f.  Bank of America Checking Account  No.  _____.

11.     In  connection with the operation of the cash management system, from time to time funds would be transferred from one of the above accounts to another. For example, funds might be transferred from the Key Bank operating account to the Key Bank payroll and expense account for the purpose of processing payroll or making payments to vendors. There have generally been no intercompany transfers between or among the Debtor entities.

12.     The Bank Accounts are both located at institutions designated as authorized depositories by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") pursuant to the U.S. Trustee Chapter 11 Guidelines for the District Court of Delaware (the "Guidelines").

13.     All monies received from Corner Bakery customers are deposited into the Bank of America Account, other than some amounts that are deposited into the Citizens Bank Operating Account.  The main cash concentration accounts are at Key Bank and Citizens Bank.

14.     The Key Operating and Citizens Bank Operating Accounts are zero balance accounts, with funds swept daily to expense accounts in which payments are processed. To fund Corner Bakery accounts payable and other costs of operation, money is swept out of the CBC Operating Account and into the Citizens Bank (now Key Bank) Expense Account. The Debtors utilize the Key Bank Expense Account to, among other things, pay vendors, payroll, suppliers, service providers, taxes, and other necessary expenses. Because the new accounts have just come online, the Debtors are in the process of implementing their normal business usages, which take time to setup. If the Debtors are required to open another new account for payroll, ADP, their payroll services, will not be able to use a new account for 3-4 weeks, which would be devastating to the Debtors' employees.

15.     Further details regarding the Debtors' payroll and other employee-related processes are described more fully in the *Motion of the Debtors for Entry of Interim and Final Orders: (I) Authorizing Debtors to Pay Prepetition Employee Obligations, Prepetition Withholding Obligations, and Postpetition Employee Obligations in the Ordinary Course; and (2) Authorizing Banks to Honor Related Transfers*, filed concurrently herewith.

16.     Corner Bakery is a party to a management services agreement with _____, which provides the services of the senior level management team that oversees the Debtors' operations. Prior to the Petition date, from time to time the Debtors transferred funds to the management company, and the management company used such funds to make payments to various of the Debtors' vendors and creditors on the Debtors' behalf. Nothing in this motion seeks authority for the Debtors to transfer funds to its management company, and the Debtor will not engage in intercompany transfers or transfer funds to its management company except as may be permitted pursuant to further Court order upon a noticed motion.

## 2. Existing Business Forms and Checks

17.     In the ordinary course of business, the Debtors occasionally use pre-printed check stock with the relevant Debtor's name printed thereon.  In addition, the Debtors maintain pre-printed correspondence and business forms, including but not limited to letterhead, envelopes, promotional materials and other business forms (collectively, along with the Debtors' checks, the "Business Forms").  To minimize administrative expense and delay, the Debtors request authority to continue to use their Business Forms substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' "Debtor-in-Possession" status until the existing stock has been exhausted, provided that the Debtors shall add the "Debtor-in-Possession" designation to any new checks ordered after the depletion of the existing stock.

18.     Parties doing business with the Debtors undoubtedly will be aware, as a result of the notice that will be sent of the filing of the Debtors' Chapter 11 Cases and the publicity of the filing, of the Debtors' status as a chapter 11 debtors-in-possession.  For this reason, the Debtors request that they be authorized to use existing checks and deposit slips without placing the label "Debtor-in-Possession" on each such form until such a time as their existing stocks are depleted. In addition, the Debtors request a reasonable amount of time to provide for the insertion of "Debtor-in-Possession" on postpetition purchase orders and invoices.

## 3. Bank Fees

19.     In the ordinary course of business, the Debtors incur and pay, honor, or allow to be deducted from the appropriate Bank Accounts periodic service charges and other ordinary course fees in connection with maintaining the Cash Management System (collectively, the "Bank Fees"). The Debtors incur approximately $21,000 in Bank Fees each month under the Cash Management System.

20.     As of the Petition Date, the Debtors do not believe that they have any outstanding or unpaid Bank Fees.  Out of an abundance of caution, and to ensure continued access to the Bank Accounts and related banking services, the Debtors seek authority to pay any prepetition Bank Fees that may have been incurred and to continue to pay the Bank Fees in accordance with past practices.

## **BASIS FOR RELIEF**

### A.  **Maintaining the Existing Cash Management System Is in the Best Interests of the Debtors, Their Creditors, and All Parties-in-Interest**

21.     The Guidelines require debtors-in-possession to, among other things:  (a) establish one "Debtor-in-Possession" bank account for all estate monies required for the payment of taxes, including payroll taxes; (b) close all existing bank accounts and open new "Debtor-in-Possession" accounts; and (c) maintain a separate "Debtor-in-Possession" account for cash collateral.  *See Region 3, District of Delaware Operating Guidelines for Chapter 11 Cases* (rev. 2020).  These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.  The Debtors submit, however, that a waiver of certain requirements is warranted.

22.     Specifically, the Bank Accounts are with the Banks, which are financially stable banking institutions with FDIC insurance that are authorized depositories in the District of Delaware and each is a party to a Uniform Depository Agreement with the U.S. Trustee.  To protect against the unauthorized payment of prepetition obligations, the Debtors represent that, if they are authorized to continue to use the Bank Accounts, they will not pay, and the Banks will be directed not to pay, any debts incurred before the Petition Date, other than as authorized by this Court.

23.     Moreover, any new account that the Debtors open will be: (a) with a bank that (i) is organized under the laws of the United States of America or any state therein, (ii) is insured by the FDIC, and (iii) has executed, or is willing to immediately execute, a Uniform Depository Agreement with the U.S. Trustee; (b) designated a "Debtor-in-Possession" account by the relevant bank; (c) in compliance with applicable provisions of any order governing the use of cash collateral entered in these Chapter 11 Cases.  Additionally, the Debtors will provide the U.S. Trustee with notice of the opening of any new accounts.

24.     Enforcement of the U.S. Trustee's requirements here would significantly disrupt the Debtors' business.  Indeed, as explained in more detail above, the Bank Accounts comprise an established cash management system that the Debtors must maintain to ensure collections and disbursements occur.  The Debtors' Cash Management System allows them to centrally manage all of their cash flow needs and includes the necessary accounting controls to enable the Debtors to trace funds through the system and ensure that all transactions are adequately documented and readily ascertainable.  While the Debtors' cases are pending, the Debtors will continue to maintain detailed records reflecting all transfers of funds.

25.     Accordingly, to avoid delays in payments to administrative creditors, to ensure as smooth a transition into chapter 11 as possible, and to maximize the value of their estates, the Debtors submit that (a) they must be permitted to continue to maintain their existing Bank Accounts and open new and close existing accounts as needed; and (b) the requested relief must extend to any new accounts by providing that the new accounts are deemed to be Bank Accounts and are similarly subject to the rights, obligations, and relief granted by this Court.

26.     The key components of the Cash Management System have been used by the Debtors for many years as a customary and essential business practice, modified only recently as

discussed above, due to the January garnishments. The widespread use of such systems demonstrates the numerous benefits they provide, including the ability to control and monitor corporate funds, ensure cash availability, and reduce administrative expenses by facilitating the movement of funds. In light of the size and complexity of the Debtors' operations, the value of the Debtors' estates cannot be maximized if the Cash Management System is substantially disrupted. In addition, maintenance of the Cash Management system is essential to preserving a "business as usual" atmosphere and avoiding unnecessary distractions.

27. Parties in interest will not be harmed by the Debtors' maintenance of the Cash Management System, including the Bank Accounts, because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred prior to the Petition Date, except for those obligations which the Debtors have been authorized to pay in connection with the First Day Motions. Specifically, with the assistance of their professionals and consistent with prior practice, the Debtors will continue to maintain detailed records of all transfers of cash and record all transactions on applicable accounts.

28. Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes debtors-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor-in-possession with the flexibility to engage in the ordinary transactions required to operate its business without unnecessary oversight by its creditors or the court. *See, e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" integral to a debtor's cash management system. *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (indicating that a debtor is "generally

authorized to continue operating its business," including performing "routine transactions necessitated by the [existing] cash management system"); *see also Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ its "usual and customary" cash management system was "entirely consistent" with section 363(c)(1).

29.     Courts in this district have observed that use of an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The Third Circuit has agreed, emphasizing the "huge administrative burden" and economic inefficiency of requiring affiliated debtors to maintain all accounts separately. *Columbia Gas Sys.*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (maintaining an existing cash management system allows a debtor "to administer more effectively and efficiently its financial operations and assets").

30.     To the extent that use of the existing Cash Management System falls outside the ordinary course of business, such use is permitted by Bankruptcy Code sections 363(b)(1) and 105(a). Bankruptcy Code section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code section 105(a) further provides that this Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *Id*. § 105(a).

31.     Numerous courts, including in this district, in other chapter 11 cases have authorized debtors to continue to use their existing cash management systems. *See, e.g., In re*

*Knotel, Inc.*, Case No. 21-10146 (MFW) (Bankr. D. Del. Feb. 3, 2021 and Feb. 25, 2021) (granting interim and final relief); *In re Pennsylvania Real Estate Investment Trust*, Case No. 20-12737 (KBO) (Bankr. D. Del. Nov. 3, 2020 and Nov. 23, 2020) (granting interim and final relief); *In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Oct. 14, 2020 and Nov. 19, 2020) (granting interim and final relief); *In re Town Sports International, LLC*, Case No. 20-12168 (CSS) (Bankr. D. Del. Sep. 16, 2020 and Oct. 13, 2020) (granting interim and final relief); *In re SHL Liquidation Industries Inc.*, Case No. 20-12024 (LSS) (Bankr. D. Del. Sep. 1, 2020 and Sep. 24, 2020) (granting interim and final relief).

**B.      Maintenance of the Debtors' Existing Bank Accounts Is Warranted**

32.      To comply with the Guidelines, the Debtors would need, among other things, to create a new system for manually issuing checks and paying postpetition obligations.  The delays that would result from opening these accounts and revising cash management procedures would disrupt the Debtors' business.  If the Debtors are required to close their existing Bank Accounts and create a new cash management system, the Debtors will suffer significant harm from the resultant operational paralysis and incur costs from closing their existing Bank Accounts, opening new accounts, and printing new checks.

33.      To avoid substantial disruption to the normal operation of their business and to preserve a "business as usual" atmosphere, the Debtors request that they be permitted to continue to use the existing Bank Accounts without establishing separate accounts for cash collateral or tax payments.  Allowing the Debtors to maintain the Bank Accounts will assist them in accomplishing a smooth transition to operations under chapter 11.  Moreover, the Debtors can distinguish between prepetition and postpetition obligations and payments without closing the Bank Accounts and opening new ones.  Additionally, the Banks have been or are in the process of being advised not

to honor checks, drafts, or other requests for payment issued prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and directed by the Debtors. Therefore, the goals of the Guidelines can be satisfied, and the Debtors' creditors can be protected, without closing the Bank Accounts.

34.     Altering the Bank Account structure would interrupt the Debtors' systems, thereby significantly disrupting the Debtors' business operations and jeopardizing the Debtors' prompt and timely payment of their obligations. The Debtors' system provides the protections required by the Guidelines—ensuring payment of taxes—without requiring the creation of new accounts and payment procedures.

35.     Thus, the Debtors respectfully request that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors-in-possession, without interruption and in the ordinary course of business. In this regard, the Banks should be authorized to receive, process, honor, and pay any and all checks, wires, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, whether such checks, drafts, wires, or ACH transfers are dated prior to or subsequent to the Petition Date consistent with any order of the Court and governing law; *provided*, *however*, that any check, draft, or other notification that the Debtors advised the Banks to have been drawn, issued, or otherwise presented prior to the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

36.     The Debtors also request that, to the extent the Banks honor a prepetition check or other item drawn on any account that is the subject of this Motion (a) at the direction of the Debtors,(b) in a good-faith belief that the Court has authorized such prepetition check or item to be

honored, or (c) as the result of an innocent mistake despite the above-described protective measures, such Bank will not be deemed to be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item honored postpetition. Both as part of this Motion and in other motions that have been filed concurrently, the Debtors are requesting authority, but not direction, to pay certain prepetition obligations. With respect to some of these obligations, the Debtors issued checks prior to the Petition Date that have yet to clear the banking system. In other instances, the Debtors will issue the relevant check once the Court enters an order permitting the Debtors to do so. The Debtors intend to inform the Banks which checks should be honored. Therefore, the Debtors request that the Banks be authorized to rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored. The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

37.    Although the Debtors are requesting the suspension of the requirement that they close all Bank Accounts and open new "Debtor-in-Possession" bank accounts, the Debtors may determine, in their business judgment, that opening new bank accounts and/or closing existing Bank Accounts is in the best interests of their estates. Nothing contained herein should prevent the Debtors from opening any additional bank accounts, or closing any existing Bank Accounts, as they may deem necessary and appropriate in their sole discretion; *provided* that any new domestic account is established at a bank that is insured with the FDIC and organized under the laws of the United States or any State therein, or, in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, is an Authorized Depository.

38.     In connection with the Cash Management System, the Debtors request authorization to continue to pay, honor, or deduct from the appropriate account certain Bank Fees. As with the Cash Management System, payment of the Bank Claims will minimize disruption to the Debtors' operations and is therefore in the best interests of their estates.  Absent payment of the Bank Fees, the Banks might assert setoff rights against the funds in the Bank Accounts, freeze the Bank Accounts, and/or refuse to provide banking services to the Debtors.  Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors seek authority, in their sole discretion, to pay and/or reimburse the Banks in the ordinary course of business for any Bank Fees arising prior to or after the Petition Date.

39.     Within fifteen days of the date of entry of the Proposed Interim Order, the Debtors will (a) contact the Banks, (b) provide the Banks with the Debtors' employer identification numbers, and (c) identify each of the Bank Accounts as held by a "Debtor-in-Possession" in a bankruptcy case.

**C.     The Debtors Should Be Authorized To Use Existing Check Stock and Related Business Forms**

40.     Local Rule 2015-2(a) provides:

Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in- Possession" and use its existing bank accounts.  However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

Del. Bankr. L.R. 2015-2(a).

41.     To minimize expenses to their estates, the Debtors also seek authorization to continue using the Business Forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors-in-possession.  Modifying existing Business Forms

would be burdensome and expensive and would confer no corresponding benefit upon those dealing with the Debtors, most of whom, as noted above, will be aware of the commencement of these Chapter 11 Cases. The Debtors therefore request authorization to use their existing Business Forms without adding a "Debtor-in-Possession" or similar legend. The Debtors will obtain new check stock bearing the designation "Debtor-in-Possession" after depleting their current check stock. To the extent that Business Forms and checks are prepared electronically, the Debtors will add a "Debtor-in-Possession" designation to such Business Forms and checks within ten (10) days of the Petition Date.

**D.     The Debtors' Existing Bank Accounts Meet the Requirements of Section 345(b) of the Bankruptcy Code**

42.     Section 345(a) of the Bankruptcy Code authorizes a debtor-in-possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C.§ 345(a). If a deposit or investment is not "insured or guaranteed by the United States or by department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that a debtor must require that the entity with which the deposit or investment is made obtain a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety or deposit securities of the kind specified in 31 U.S.C. § 9303, unless the court for cause orders otherwise. See 11 U.S.C. § 345(b); see also 140 Cong. Rec. H10,767 (daily ed. Oct. 4, 1994), 1994 WL 54773 (stating that while the requirement under section 345(b) for debtor funds to be FDIC insured, collateralized, or bonded may be "wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, it can work to needlessly handcuff larger, more sophisticated debtors").

43.     All of the Bank Accounts are compliant with the requirements of section 345 of the Bankruptcy Code as the Banks are deemed Authorized Depositories as set forth in the U.S. Trustee Guidelines.  Additionally, all Bank Accounts, to the best of the Debtors' knowledge, are insured by the Federal Deposit Insurance Corporation.  Out of an abundance of caution, however, to the extent that any of the Bank Accounts do not strictly comply with section 345 of the Bankruptcy Code, the Debtors submit that cause exists to waive any such noncompliance as set forth herein given that all funds are deposited safely and prudently at a financially stable banking institution.

44.     Pursuant to Local Rule 2015-2(b), and subject to certain exceptions not relevant here, a waiver of the requirements set forth in section 345(b) of the Bankruptcy Code may not be granted without notice and a hearing.  However, Local Rule 2015-2(b) provides that "if a motion for such a waiver is filed on the first day of a chapter 11 case in which there are more than 200 creditors, or otherwise with cause shown, the Court may grant an interim waiver until a hearing on the debtor's motion can be held."  Del. Bankr. L.R. 2015-2(b).

45.     Here, the Debtors satisfy both the procedural and substantive requirements necessary to obtain an interim waiver of section 345(b) of the Bankruptcy Code.  The Debtors have filed this Motion on the first day of the Chapter 11 Cases, and the Debtors, collectively, have substantially more than 200 creditors.  Accordingly, the Debtors' present request for an interim waiver is appropriate.

## RESERVATION OF RIGHTS

46.     Nothing contained in this Motion is intended or should be construed as an admission as to the validity of any claim against Corner Bakery, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. Corner Bakery expressly reserves its right to contest any claim

related to the relief sought in this Motion. Likewise, if the Court grants the relief sought in this Motion, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

47. Furthermore, nothing contained in this Motion is intended or should be constructed as waiver of Corner Bakery's right to seek authority to honor prepetition benefits owed to its Employees. To the contrary, Corner Bakery intends to shortly file a motion seeking authority to honor prepetition benefits.

## THE REQUIREMENTS OF BANKRUPTCY RULES 6003 ARE SATISFIED

48. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the relief requested in this Motion is integral to Corner Bakery's ability to transition its operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt its operations at this critical juncture. For the reasons discussed herein, the relief requested in this Motion is necessary in order for Corner Bakery to operate its business in the ordinary course and preserve the ongoing value of its operations and maximize the value of its estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULES 6004(a) and 6004(h)

49. To implement the foregoing successfully, Corner Bakery requests that the Court enter an order providing that notice of the relief requested in this Motion satisfies Bankruptcy Rule

6004(a) and that it has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

50.     The Debtors have provided notice of this Motion to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Debtors' prepetition secured lender and counsel thereto; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the office of the attorneys general for the states in which the Debtors operate; (g) the depository institutions; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, the Debtors will serve copies of this Motion and any order entered on this Motion as required by Local Rule 9013-1(m).  Corner Bakery submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

51.     No prior request for the relief sought in this Motion has been made by Corner Bakery to this or any other court.

Dated:  February 23, 2023
Wilmington, Delaware

/s/ Mette H. Kurth
Mette H. Kurth (DE Bar No. 6491)
**CULHANE MEADOWS, PLLC**
3411 Silverside Road
Baynard Building, Suite 104-13
Wilmington, Delaware 19810

Telephone: (302) 289-8839, Ext. 100
Email: mkurth@cm.law

*Proposed Counsel to the Debtors and Debtors In Possession*

## EXHIBIT A

## Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CBC RESTAURANT CORP., *et al*,[2] | Case No. 23-10245-KBO |
| Debtors. | (Joint Administration Request) |

**INTERIM ORDER ORDER: (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS, AND (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") for entry of interim and final orders pursuant to sections 105(a), 345, 363(c)(1), 364(a), and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2015-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i) authorizing, but not directing, the Debtors to (a) continue to operate their existing cash management systems, including maintenance of the Debtors' existing bank accounts, checks, and business forms, (b) honor certain prepetition obligations related thereto, and (ii) granting related relief, as more fully set forth in the Motion; and upon consideration of the *Declaration of Jignesh Pandya, Chief Executive Officer and Chief Operating Officer of Corner Bakery, in Support of Chapter 11 Petitions and Certain First Day Emergency Motions* in support of first day motions and

---

[2]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: CBC Restaurant Corp (0801); Corner Bakery Holding Company (3981) and CBC Cardco, Inc. d/b/a Corner Bakery Café (1938). The location of the Debtors' service address is: 121 Friends Lane, Ste. 301, Newtown, PA, 18940.

consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and due and proper notice of the hearing to consider the relief requested herein (the "Hearing") having been provided to the Notice Parties; and it appearing that no other or further notice need be provided; and the legal and factual bases set forth in the Motion establishing just and sufficient cause to grant the relief requested therein; and the relief granted herein being in the best interests of the Debtors, their estates, creditors, and all parties-in-interest; and the Court having held the Hearing with the appearances of interested parties noted in the record of the Hearing; and no objection to the Motion having been filed or made at the Hearing on the Motion; and upon all of the proceedings before the Court and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT

1.      The Motion is GRANTED as set forth herein on an interim basis.

2.      The Debtors are authorized, but not directed, to: (a) continue operating the Cash Management System used prior to the commencement of these Chapter 11 Cases; and (b) honor their prepetition obligations related thereto.

3.      The Debtors are further authorized, but not directed, to: (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date; (b) use, in their present form, any pre-printed correspondence and Business Forms (including checks and letterhead) without reference to the Debtors' status as debtors-in-possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual

means, including checks, ACH transfers, wire transfers, and other debits; and (e) pay any ordinary course Bank Claims incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts; *provided* that once the Debtors' pre-printed correspondence, Business Forms (including letterhead) and existing checks have been used, the Debtors shall, when reordering, require the designation "Debtor-in-Possession" and the corresponding bankruptcy case number on all such documents; *provided, further*, that with respect to checks which the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor-in-Possession" legend and the bankruptcy case number on such items within ten (10) days of the date of entry of this Order.

4.     Within fifteen (15) days of the date of entry of this Order, the Debtors shall (a) contact the Banks, (b) provide the Banks with the Debtors' employer identification numbers, and (c) identify each of the Bank Accounts as held by a "Debtor-in-Possession" in a bankruptcy case.

5.     The Banks are authorized and directed to continue to service and administer the Bank Accounts as debtor-in-possession accounts without interruption, and to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH transfers  shall be honored or dishonored consistent with any order(s) of this Court and governing law, whether such checks, drafts, wires or ACH transfers are dated prior to or subsequent to the Petition Date.

6.     The Banks shall implement reasonable handling procedures designed to effectuate the terms of this Order, and if it implements such handling procedures and then honors a prepetition check or other item drawn on any Bank Account that is the subject of

this Order either (i) at the direction of the Debtors to honor such prepetition check or item; (ii) in good faith believe that the Court has authorized, or intends to authorize, such prepetition check or item to be honored; or (iii) as a result of an innocent mistake made despite implementation of such handling procedures, the Banks shall not be deemed in violation of this Order or have liability for a prepetition or other item drawn on either Bank Account that is subject to this Order.

7.     The Banks are authorized to charge back against the Bank Accounts (i) any returned items drawn or presented against the Bank Accounts, regardless of whether such returned items originated prepetition or postpetition, and (ii) any overadvances, credit balances or other customary fees or expenses on the Bank Accounts that arise in the ordinary course of business, either prepetition or postpetition, in connection with the use and management of such Bank Accounts; *provided*, *however*, that the Banks shall not be required to make transfers from or honor any draws against any of the Bank Accounts except to the extent of collected funds available in such respective Bank Accounts.

8.     The Banks are authorized to (i) continue to charge the Debtors for certain services and other fees, costs, charges and expenses (collectively, the "Bank Fees") and (ii) charge back returned items, whether such items are dated prior to, on or subsequent to the Petition Date, to the Bank Accounts in the ordinary course, and the Debtors are authorized to pay such fees.

9.     The Debtors are authorized to open any new Bank Accounts or close any existing Bank Accounts as it may deem necessary and appropriate in their sole discretion; provided, however, that the Debtors give notice within fifteen (15) days to the Office of the United States Trustee for the District of Delaware and any statutory committees appointed

in these chapter 11 cases; *provided, further, however* that the Debtors shall open any such new Bank Account at banks that have executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, or at such banks that are willing to immediately execute such an agreement.

10.     The Debtors are not required to establish a specific new bank account for tax payments. The Debtors' time to comply with section 345(b) of the Bankruptcy Code is hereby extended for a period of thirty (30) days from the date of this Order (the "Extension Period"), *provided, however*, that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or the waiver of the requirements of section 345(b) in these Chapter 11 Cases.

11.     This Order shall apply to any and all Bank Accounts actually in, or linked to, the Cash Management System, even if such Bank Accounts do not appear in the Motion. Any and all accounts opened by the Debtors on or after the Petition Date at any Bank shall be deemed a Bank Account (as if it had been opened prior to the Petition Date and listed on Exhibit 1) and any and all Banks at which such accounts are opened shall similarly be subject to the rights and obligations of this Order.

12.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights

under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens. Notwithstanding anything in this Order to the contrary, the relief granted herein shall be subject to the orders authorizing postpetition financing and the use of cash collateral and any applicable budget thereunder.

13.     Bankruptcy Rule 6003 and Local Rule 9013-1(m) have been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

14.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.     The Debtors are authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order.

16.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

17.     A final hearing to consider the relief requested in the Motion shall be held on _____ **(prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served as to be actually received on or prior _____ at **4:00 p.m. (Prevailing Eastern Time).**

# **EXHIBIT B**

## **Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CBC RESTAURANT CORP., *et al*,[3] | Case No. 23-10245-KBO |
| Debtors. | (Joint Administration Requested) |

**FINAL ORDER: (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
MAINTAIN THEIR EXISTING CASH MANAGEMENT SYSTEM, BANK
ACCOUNTS, AND BUSINESS FORMS, AND (B) HONOR CERTAIN
PREPETITION OBLIGATIONS RELATED THERETO; AND (II) GRANTING
RELATED RELIEF**

Upon the motion (the "<u>Motion</u>") of the debtors and debtors-in-possession in the above-captioned cases (collectively, the "<u>Debtors</u>") for entry of interim and final orders pursuant to sections 105(a), 345, 363(c)(1), 364(a), and 503(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2015-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") (i) authorizing, but not directing, the Debtors to (a) continue to operate their existing cash management systems, including maintenance of the Debtors' existing bank accounts, checks, and business forms, (b) honor certain prepetition obligations related thereto, and (ii) granting related relief, as more fully set forth in the Motion; and upon consideration of the *Declaration of Jignesh Pandya, Chief Executive Officer and Chief Operating Officer of Corner Bakery, in Support of Chapter 11 Petitions and Certain First Day Emergency Motions* in support of first day motions and

---

[3]    Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: CBC Restaurant Corp (<u>0801</u>); Corner Bakery Holding Company (<u>3981</u>) and CBC Cardco, Inc. d/b/a Corner Bakery Café (<u>1938</u>). The location of the Debtors' service address is: 121 Friends Lane, Ste. 301, Newtown, PA, 18940.

consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and due and proper notice of the hearing to consider the relief requested herein (the "Hearing") having been provided to the Notice Parties; and it appearing that no other or further notice need be provided; and the legal and factual bases set forth in the Motion establishing just and sufficient cause to grant the relief requested therein; and the relief granted herein being in the best interests of the Debtors, their estates, creditors, and all parties-in-interest; and the Court having held the Hearing with the appearances of interested parties noted in the record of the Hearing; and no objection to the Motion having been filed or made at the Hearing on the Motion; and upon all of the proceedings before the Court and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT

1.      The Motion is GRANTED as set forth herein basis.

2.      The Debtors are authorized, but not directed, to: (a) continue operating the Cash Management System used prior to the commencement of these Chapter 11 Cases; and (b) honor their prepetition obligations related thereto.

3.      The Debtors are further authorized, but not directed, to: (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date; (b) use, in their present form, any pre-printed correspondence and Business Forms (including checks and letterhead) without reference to the Debtors' status as debtors-in-possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual

means, including checks, ACH transfers, wire transfers, and other debits; and (e) pay any ordinary course Bank Claims incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts; *provided* that once the Debtors' pre-printed correspondence, Business Forms (including letterhead) and existing checks have been used, the Debtors shall, when reordering, require the designation "Debtor-in-Possession" and the corresponding bankruptcy case number on all such documents; *provided, further*, that with respect to checks which the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor-in-Possession" legend and the bankruptcy case number on such items within ten (10) days of the date of entry of this Order.

4.     Within fifteen (15) days of the date of entry of this Order, the Debtors shall (a) contact the Banks, (b) provide the Banks with the Debtors' employer identification numbers, and (c) identify each of the Bank Accounts as held by a "Debtor-in-Possession" in a bankruptcy case.

5.     The Banks are authorized and directed to continue to service and administer the Bank Accounts as debtor-in-possession accounts without interruption, and to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH transfers  shall be honored or dishonored consistent with any order(s) of this Court and governing law, whether such checks, drafts, wires or ACH transfers are dated prior to or subsequent to the Petition Date.

6.     The Banks shall implement reasonable handling procedures designed to effectuate the terms of this Order, and if it implements such handling procedures and then honors a prepetition check or other item drawn on any Bank Account that is the subject of

this Order either (i) at the direction of the Debtors to honor such prepetition check or item; (ii) in good faith believe that the Court has authorized, or intends to authorize, such prepetition check or item to be honored; or (iii) as a result of an innocent mistake made despite implementation of such handling procedures, the Banks shall not be deemed in violation of this Order or have liability for a prepetition or other item drawn on either Bank Account that is subject to this Order.

7.     The Banks are authorized to charge back against the Bank Accounts (i) any returned items drawn or presented against the Bank Accounts, regardless of whether such returned items originated prepetition or postpetition, and (ii) any overadvances, credit balances or other customary fees or expenses on the Bank Accounts that arise in the ordinary course of business, either prepetition or postpetition, in connection with the use and management of such Bank Accounts; *provided*, *however*, that the Banks shall not be required to make transfers from or honor any draws against any of the Bank Accounts except to the extent of collected funds available in such respective Bank Accounts.

8.     The Banks are authorized to (i) continue to charge the Debtors for certain services and other fees, costs, charges and expenses (collectively, the "Bank Fees") and (ii) charge back returned items, whether such items are dated prior to, on or subsequent to the Petition Date, to the Bank Accounts in the ordinary course, and the Debtors are authorized to pay such fees.

9.     The Debtors are authorized to open any new Bank Accounts or close any existing Bank Accounts as it may deem necessary and appropriate in their sole discretion; provided, however, that the Debtors give notice within fifteen (15) days to the Office of the United States Trustee for the District of Delaware and any statutory committees appointed

in these chapter 11 cases; provided, further, however that the Debtors shall open any such new Bank Account at banks that have executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, or at such banks that are willing to immediately execute such an agreement.

10.     The Debtors are not required to establish a specific new bank account for tax payments.  The Debtors' time to comply with section 345(b) of the Bankruptcy Code is hereby extended for a period of thirty (30) days from the date of this Order (the "Extension Period"), *provided, however*, that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or the waiver of the requirements of section 345(b) in these Chapter 11 Cases.

11.     This Order shall apply to any and all Bank Accounts actually in, or linked to, the Cash Management System, even if such Bank Accounts do not appear in the Motion. Any and all accounts opened by the Debtors on or after the Petition Date at any Bank shall be deemed a Bank Account (as if it had been opened prior to the Petition Date and listed on Exhibit 1) and any and all Banks at which such accounts are opened shall similarly be subject to the rights and obligations of this Order.

12.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights

under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.  Notwithstanding anything in this Order to the contrary, the relief granted herein shall be subject to the orders authorizing postpetition financing and the use of cash collateral and any applicable budget thereunder.

13.     Bankruptcy Rule 6003 and Local Rule 9013-1(m) have been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

14.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.     The Debtors are authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order.

16.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.