**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **CBC RESTAURANT CORP**. *et al.*,[1] | Case No. 23-10245 (KBO) |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF JIGNESH PANDYA, CHIEF EXECUTIVE OFFICER AND CHIEF OPERATING OFFICER OF CORNER BAKERY, IN SUPPORT OF CHAPTER 11 PETITIONS AND CERTAIN FIRST DAY EMERGENCY MOTIONS**

I, Jignesh Pandya, hereby declare under penalty of perjury as follows:

1. I am the Chief Executive Officer and Chief Operating Officer of CBC Restaurant Corp. ad Corner Bakery Holding Company, each a corporation organized under the laws of the state of Delaware, and CBC Cardco, Inc., a corporation organized under the laws of Florida, and each a debtor and debtor in possession in the above-captioned chapter 11 cases (the "Debtors"). I have served the Debtors as Chief Executive Officer and Chief Operating Officer since 2020. I generally am familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.

2. I submit this declaration (the "Declaration") in support of the following motions: (a) the Motion oof the Debtors for Entry of an Interim Order: (a) Authorizing the Debtors' Use of Cash Collateral; (B) Scheduling a Final Hearing; and (C) for Related Relief; (b) the Motion of the Debtors for Entry of Interim and Final Orders: (1) Authorizing Debtors to Pay Prepetition

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include CBC Restaurant Corp. (0801), Corner Bakery Holding Company (3981), and CBC Cardco, Inc. (1938). The Debtors' service address is 121 Friends Land, Suite 300, Newtown PA 18940.

USA.602569698.6/WN4

Employee Obligations, Prepetition Withholding Obligations, and Postpetition Employee Obligations in the Ordinary Course; and (B) Authorizing Banks to Honor Related Transfers; (c) the *Motion of the Debtors for Entry of Interim and Final Orders: (I) Authorizing the Debtors to (A) Continue to Maintain Their Existing Cash Management System, Bank Accounts, and Business Forms, and (B) Honor Certain Prepetition Obligations Related Thereto; and (II) Granting Related Relief*; and (d) the *Motion of the Debtors for Entry of an Order: (1) Directing Joint Administration of Chapter 11 Cases; and (2) Granting Related Relief.*

3.    Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Debtors' management team and the Debtors' advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and prior restructuring initiatives, and/or my opinions based upon my experience and knowledge.  If called as a witness, I could and would testify competently to the facts set forth in this Declaration to the best of my knowledge, information, and belief.  I am authorized to submit this Declaration on behalf of the Debtors.

**A.    The Corner Bakery**

4.    Corner Bakery is a fast-casual restaurant serving kitchen-crafted breakfast, lunch, and dinner and catering to guests. Its restaurants have been a neighborhood favorite since the brand was established in 1991. The original American Italian bakery cafe was founded on a philosophy of creating a warm and comfortable place for people to relax with friends, family, and neighbors. Today, the restaurant features artisan-inspired, seasonal menu options made with fresh ingredients, while delivering a premier bakery cafe experience in the heart of neighborhoods and urban markets across California, Texas, Pennsylvania, Illinois, Virginia, Maryland, and the District of Columbia.

2

5.    With roughly locations across the United States, plus 14 franchised locations, Corner Bakery is a leader in the fast casual segment of the food service industry. The company was recognized by TripAdvisor as a "Top U.S. Restaurant Chain" for 2019 and ranked one of Franchise Times' "Top 200" brands in the franchise space. Corner Bakery ranked No. 121 among chains in U.S. systemwide sales in a recent Nation's Restaurant News census.

6.    Corner Bakery was founded by Lettuce Entertain You Enterprises, a Chicago-based restaurant group. Like many urban, fast-casual concepts, Corner Bakery struggled during the pandemic and saw sharp declines in earnings and revenue. Office closures proved especially problematic for Corner Bakery, as a large part of its revenue is derived from catering for workplaces, as well as breakfast and lunch for commuters. Moreover, the company had been experiencing difficulties and declining average unit volumes even before the pandemic, leading it to hire restructuring and financial advisors to explore strategic alternatives.

7.    In April 2020, the company was purchased from Roark Capital Group  by Pandya Restaurant Growth Brands, LLC ("PRGB"), one of the Rohan Group of Companies, operated by the real estate investor and restaurant operator Jignesh (Jay) Pandya of Bucks County, Pennsylvania. The Rohan Group of Companies is a well-established organization with ownership interests in a wide array of business enterprises, including operations with multiple franchised restaurant concepts. PRGB brought an experienced and successful ownership group to Corner Bakery, as well as access to resources to continue to operate in 2020's challenging environment. Under its new ownership, Corner Bakery has focused on key operational initiatives to improve guest experience, menu development, and the growth of its brand to achieve future success following a period of unprecedented industry disruption. Since acquiring Corner Bakery, PRGB

has seen significant success, overseeing substantial growth in the company's business, with a roughly 100% increase in annual sales.

**B.     The Prepetition Capital Structure**

8.     Pursuant to a certain Credit and Guaranty Agreement, dated as of November10, 2017 (as amended or otherwise modified from time to time, the ("Credit Agreement") by and among CBC Restaurant Corp., a Delaware corporation ("Company"), Corner Bakery Holding Company (f/k/a IFCB Holding Corporation), a Delaware corporation ("Holdings"), and certain subsidiaries of the Company, as Guarantors (Holdings and such other Guarantors, and together with Company, each a ("Credit Party") and collectively, the ("Credit Parties"), the Lenders party thereto from time to time (the "Lenders") and Goldman Sachs Specialty Lending Group, L.P., as Administrative Agent and Collateral Agent (in each such capacity, "Agent"), agreed to extend credit facilities in an aggregate amount not to exceed $177,500,000, consisting of $155,000,000 aggregate amount of Tranche A Term Loans, and $22,500,000 aggregate principal amount of Revolving Commitments (subject to a $9,500,000 sublimit for Revolving Loans and a $13,000,000 sublimit for Letters of Credit (the "Credit Facility"). The Credit Facility was amended and/or extended as of September 11, 2019, March 31, 2020, April 16, 2020, June 30, 2020, August 7, 2020, September 10, 2020, October 21, 2020, October 28, 2020 and June 15, 2021.

9.     Certain Credit Parties also entered into a Pledge and Security Agreement dated as of November 10, 2017 (as amended or otherwise modified from time to time, including the Pledge Supplement dated September 30, 2019, and a Trademark Security Agreement, also dated as of November 10, 2017, granted in connection with the Credit Facility. As of the Petition Date, the amount allegedly due under the Credit Agreement (and disputed by the Debtors) is approximately $33.8 million.

USA.602569698.6/WN4

**C.** **SSCP's Acquisition of the Credit Facility and the Events Leading to the Bankruptcy Filings**

10. Since 2020, Corner Bakery has made roughly $7.5 million in principal payment on account of the Credit Facility. During that same period, although Corner Bakery's core business remained strong, the company has been plagued the same challenges that have riddled the fast casual restaurant sector since 2020, such as cost increases for ingredients that cannot easily be passed on to customers, inflation, supply chain disruptions, a challenging labor market, and landlords how have been increasingly impatient as COVID relief funds have expired a restaurant business in the post-COVID climate. While many Corner Bakery locations are profitable, others are underperforming and burdening the company. By letters dated May 25, 2022, September 25, 202, November 1, 2022, the Agent notified CBC Restaurant Corp. of alleged Events of Default under the Credit Facility. As the Credit Facility's maturity date approached, Corner Bakery engaged with the Lenders and their Agent to discuss a payoff of the loan balance in the range of roughly $20 - $24 million.

11. However, on or about January 31, 2023, while it was in the midst of restructuring and payoff negotiations and discussions, Corner Bakery was notified that SSCP Restaurant Investors, LLC ("SSCP")—a market competitor—had purchased the Credit Facility. By letter dated January 31, 2023, the Agent notified CBC Restaurant Corp. of its resignation as agent and the appointment of a successor agent. And, by letter dated February 1, 2023, CBC Restaurant Corp. was notified that each of the Lenders has assigned and transferred all of its rights under the Credit Facility (with certain exceptions), to SSCP Restaurant Investors, LLC. ("SSCP"). By letter dated February 10, 2023, SSCP requested that certain financial and business information be provided to it no later than February 16, 2023. And by letter dated February 17, 2023, CBC Restaurant Corp. was notified by SSCP of alleged additional events of default.

12.    Despite efforts to make payments and requests for a reconciliation of payments to the account, the Debtors were informed that SSCP would not address their requests and intended to foreclose on the company's assets. SSCP did not respond to the Debtors' requests that it provide the basis for its stated payoff number and payoff amount, hampering the Debtors ability to cure any alleged defaults under the Credit Facility to which SSCP is now a party as a successor in interest to the Lenders. Thereafter, SSCP caused a Notice of Public Sale of Collateral to be issued, setting a sale of collateral to be held on February 23, 2023 at 12 noon (CST).

13.    As a result of the discord with SSCP and the vulnerable state of its financial condition, the Debtors have determined that a substantial deleveraging combined with new capital investment is the best path forward for their business as a going concern and will serve as the foundation of a reorganization plan that will payoff the company's creditors while also preserving stakeholder value. Corner Bakery commenced these Chapter 11 cases on February 28, 2023.

14.    The Debtors are in the process of investigating the validity of SSCP's prepetition liens, reviewing their books and records, and reconciling all amounts paid and owing under the Credit Facility. As a result, the Debtors fully reserve their rights to later challenge, if appropriate, the amount owing to SSCP as well as secured status of any, or all, of SSCP's asserted security interests. Nothing herein shall be construed as an admission as to the validity of any prepetition liens nor as a waiver of the right to later challenge such liens, all such rights being expressly reserved.

C.    **The Wage Motion**

**A.  Corner Bakery's Employees**

15.    Corner Bakery currently employs approximately 2,000 individuals, approximately 150 of whom are full-time, salaried  employees and the remainder of whom are hourly employees

(collectively, the "Employees"). None of the Employees are represented by a union or collective bargaining unit. The Employees perform a variety of critical functions for Corner Bakery, including administration, human resources, information technology, marketing, food and beverage management, managing the "front of the house," food preparation, kitchen or "back of the house" management, food service, cashiering, and dishwashing. Without the continued, uninterrupted services of these Employees, Corner Bakery's chapter 11 efforts will be materially impaired.

16. Corner Bakery's Employees rely on their compensation to pay daily living expenses and support their families. These individuals will be exposed to significant financial harm if Corner Bakery is not permitted to continue paying their compensation. Accordingly, the relief requested herein is necessary and appropriate under the facts and circumstances of these chapter 11 cases.

**B. Employee Compensation**

**1. Wages Owed to Corner Bakery's Employees**

17. In the ordinary course of the Debtors' businesses, Corner Bakery pays wages, salaries, and compensation ("Wages") to its Employees on a bi-weekly basis by direct deposit or check, with a small number of Employees being paid daily by pay card. Employees who are paid on a bi-weekly basis are paid in arrears for the period ending one week before the date that their Wages are paid. February 24, 2023, is the next scheduled date for Corner Bakery's bi-weekly payroll.

18. Corner Bakery's gross payroll is roughly $5.0 million per month. As of the Petition Date, the Debtors estimate that they owe their Employees an aggregate of approximately $2,314,000 million in accrued Wages earned during the period prior from February 6, 2023, through February 19, 2023 and to be paid in their regular payroll due on February 24th. Additional accrued, unpaid Wages earned for the period from February 20, 2023, through February 22, 2023,

which are to be paid as part of the March 10th payroll, are estimated to be, in aggregate, up to approximately $600,000. No individual is owed in excess of the $15,150 statutory cap under Bankruptcy Code section 507(a)(4) on account of such Wages.

19.     By way of this Motion, Corner Bakery requests authority, in the ordinary course of business, to pay accrued, prepetition Wages to its Employees, up to the statutory priority amount of $15,150 per individual (inclusive of other Employee obligations that are subject to section 507(a)(4) of the Bankruptcy Code), and to continue to otherwise pay its Employees in the ordinary course of business (and subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder).

### 2.   Wisely Pay Cards.

20.     Corner Bakery pays a small number of Employees via Wisely™ pay cards. Instead of a traditional bank account, pay is loaded into the pay card account. These pay card accounts have many of the features of a traditional bank account but also may have fewer fees. Two Corner Bakery Employees are owed $1,588.62 in aggregate prepetition Wages to be funded using pay cards.

### 3.   Payroll Taxes & Garnishments

21.     As an employer, Corner Bakery is required by law: (a) to withhold federal, state, and local taxes from Wages for remittance to appropriate tax authorities; and (b) to pay, from its own funds, social security and Medicare taxes and pay, based on a percentage of gross payroll and subject to state- imposed limits, additional amounts for state and federal unemployment insurance and similar programs (collectively, "<u>Payroll Taxes</u>") and remit the same to the appropriate authorities (collectively, the "<u>Taxing Authorities</u>").

22.     In the aggregate, the Debtors estimate that Payroll Taxes total approximately $1.1 million per month, based on actual monthly Payroll Taxes incurred during February 2023. The Debtors hereby seek authority (subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder) to remit Payroll Taxes associated with the Wages to the appropriate Taxing Authorities as needed.

23.     In the ordinary course of processing payroll checks for their Employees, the Debtors may be required by law, in certain circumstances, to withhold from certain Employees' wages amounts for various garnishments, such as tax levies, child support, and other court-ordered garnishments (collectively, the "Garnishments"). The Debtors then remit the Garnishments to the appropriate state agencies. The Debtors estimate that they withhold approximately $6,000 per pay period employees on account of Garnishments. As of the Petition Date, the Debtors estimate that there will be roughly $6,000 in accrued and unpaid Garnishments. The Debtors seek authority to continue deducting and remitting amounts to the appropriate third parties in a manner consistent with historical practice for any unpaid Garnishments and to continue to honor the Garnishments in the ordinary course of their business and consistent with past practices.

**C.  Corner Bakery's Cash Management System.**

24.     Before the commencement of the Chapter 11 Cases, and in the ordinary course of business, the Debtors historically implemented and maintained a cash management system (the "Cash Management System") to facilitate the efficient operation of their business and operations. The Debtors use the Cash Management System in the ordinary course of business to collect, transfer, and disburse funds generated from their operations.

**1.      The Bank Accounts**

25. The Cash Management System is comprised of bank accounts at Key Bank, Citizens Bank, and Bank of America (together with any accounts opened after the Petition Date, the "Bank Accounts" and each, a "Bank Account"), which include the following:

    a. Key Bank Operating Account No. 388-613-67XXXX (NO DACA):

    b. Key Bank Payroll/Expense Account No. 388-613-67XXXX (NO DACA);

    c. Citizens Bank Operating Account No. 631251XXXX (DACA);

    d. Citizens Expense Account No. 631251XXXX (DACA);

    e. Citizens Merchant Account No. 631251XXXX (DACA); and

    f. Bank of America Checking Account

26. In connection with the operation of the cash management system, from time to time funds would be transferred from one of the above accounts to another. For example, funds might be transferred from the Key Bank operating account to the Key Bank payroll and expense account for the purpose of processing payroll or making payments to vendors. There have generally been no intercompany transfers between or among the Debtor entities.

27. The Bank Accounts are both located at institutions designated as authorized depositories by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") pursuant to the U.S. Trustee Chapter 11 Guidelines for the District Court of Delaware (the "Guidelines").

28. All monies received from Corner Bakery customers are deposited into the Bank of America Account, other than some amounts that are deposited into the Citizens Bank Operating Account. The main cash concentration accounts are at Key Bank and Citizens Bank.

29. The Key Operating and Citizens Bank Operating Accounts are zero balance accounts, with funds swept daily to expense accounts in which payments are processed. To fund

Corner Bakery accounts payable and other costs of operation, money is swept out of the Operating Account and into the Citizens Bank (now Key Bank) Expense Account. The Debtors utilize the Key Bank Expense Account to, among other things, pay vendors, payroll, suppliers, service providers, taxes, and other necessary expenses. Because the new accounts have just come online, the Debtors are in the process of implementing their normal business usages, which take time to setup. If the Debtors are required to open another new account for payroll, ADP, their payroll services, will not be able to use a new account for 3-4 weeks, which would be devastating to the Debtors' employees.

30.     Further details regarding the Debtors' payroll and other employee-related processes are described more fully in the *Motion of the Debtors for Entry of Interim and Final Orders: (I) Authorizing Debtors to Pay Prepetition Employee Obligations, Prepetition Withholding Obligations, and Postpetition Employee Obligations in the Ordinary Course; and (2) Authorizing Banks to Honor Related Transfers*, filed concurrently herewith.

31.     Corner Bakery is a party to a management services agreement with a third party which provides the services of the senior level management team that oversees the Debtors' operations. Prior to the Petition date, from time to time the Debtors transferred funds to the management company, and the management company used such funds to make payments to various of the Debtors' vendors and creditors on the Debtors' behalf. Nothing in this motion seeks authority for the Debtors to transfer funds to its management company, and the Debtor will not engage in intercompany transfers or transfer funds to its management company except as may be permitted pursuant to further Court order upon a noticed motion.

### 2.     Existing Business Forms and Checks

32.     In the ordinary course of business, the Debtors occasionally use pre-printed check stock with the relevant Debtor's name printed thereon.  In addition, the Debtors maintain pre-printed correspondence and business forms, including but not limited to letterhead, envelopes, promotional materials and other business forms (collectively, along with the Debtors' checks, the "Business Forms").  To minimize administrative expense and delay, the Debtors request authority to continue to use their Business Forms substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' "Debtor-in-Possession" status until the existing stock has been exhausted, provided that the Debtors shall add the "Debtor-in-Possession" designation to any new checks ordered after the depletion of the existing stock.

33.     Parties doing business with the Debtors undoubtedly will be aware, as a result of the notice that will be sent of the filing of the Debtors' Chapter 11 Cases and the publicity of the filing, of the Debtors' status as a chapter 11 debtors-in-possession.  For this reason, the Debtors request that they be authorized to use existing checks and deposit slips without placing the label "Debtor-in-Possession" on each such form until such a time as their existing stocks are depleted.  In addition, the Debtors request a reasonable amount of time to provide for the insertion of "Debtor-in-Possession" on postpetition purchase orders and invoices.

### 3.     Bank Fees

34.     In the ordinary course of business, the Debtors incur and pay, honor, or allow to be deducted from the appropriate Bank Accounts periodic service charges and other ordinary course fees in connection with maintaining the Cash Management System (collectively, the "Bank Fees").  The Debtors incur approximately $21,000 in Bank Fees each month under the Cash Management System.

USA.602569698.6/WN4

35.     As of the Petition Date, the Debtors do not believe that they have any outstanding or unpaid Bank Fees.  Out of an abundance of caution, and to ensure continued access to the Bank Accounts and related banking services, the Debtors seek authority to pay any prepetition Bank Fees that may have been incurred and to continue to pay the Bank Fees in accordance with past practices.

### D.  The Cash Collateral Motion

*36.*     Corner Bakery is seeking the use of cash collateral for the limited purpose of funding up to $2.4 million for the purposes of paying its regular payroll due on February 23, 2023, as set forth in the accompanying *Motion of the Debtors for Entry of Interim and Final Orders: (1) Authorizing Debtors to Pay Prepetition Employee Obligations, Prepetition Withholding Obligations, and Postpetition Employee Obligations in the Ordinary Course; and (B) Authorizing Banks to Honor Related Transfers* and to make certain payments to essential post-petition food vendors in the amount of up to $1 million (the "Critical Operating Expenses"). Corner Bakery is preparing a separate motion to be filed shortly seeking approval of debtor-in-possession financing and longer-term usage of cash collateral.

37.     I believe that Corner Bakery's need to use cash collateral is immediate and critical in order to continue to operate their business and to administer and preserve the value of their estates. Corner Bakery does not have sufficient sources of working capital or available without the authorized use of Cash Collateral.

38.     I believe that SSCP is adequately protected because without the use of the cash collateral to pay the Critical Operating Expenses, it is extremely unlikely that the Debtors can remain in business and successfully reorganize. Without the ability to fund payroll and  purchase

food and inventory for its restaurants, Corner Bakery will no longer be able to operate and the value of the lender's collateral will decline precipitously.

39.     Therefore, it is my business judgment that Corner Bakery must be permitted to preserve its value and that entry of an Order authorizing the interim use of cash collateral is necessary and appropriate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  February 23, 2023

_____
Jignesh Pandya
Chief Executive Officer
Chief Operating Officer

USA.602569698.6/WN4