**<u>Exhibit 1</u>**

**Modified Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **CBC RESTAURANT CORP**. *et al.*,[1] | Case No. 23-10245 (KBO) |
| Debtors. | (Joint Administration Requested) |

### INTERIM ORDER (A) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL; (B) SCHEDULING A FINAL HEARING; AND (C) GRANTING RELATED RELIEF

Pending before the Court is the *Motion of the Debtors for Entry of an Interim Order: (A) Authorizing the Debtors' Use of Cash Collateral; (B) Scheduling a Final Hearing; And (C) for Related Relief* [D.I. 18], (the "**Motion**")[2] filed by CBC Restaurant Corp. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, "Corner Bakery" or the "Debtors"), for an interim order under sections 105, 361, 362, 363, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), seeking:

a. the use of cash collateral for the limited purpose of funding up to $2.4 million for the purposes of paying its regular payroll due on February 23, 2023, as set forth in the accompanying *Motion of the Debtors for Entry of Interim and Final Orders: (1) Authorizing Debtors to Pay Prepetition Employee Obligations, Prepetition Withholding Obligations, and Postpetition Employee Obligations in the Ordinary Course*; and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include CBC Restaurant Corp. (0801), Corner Bakery Holding Company (3981), and CBC Cardco, Inc. (1938). The Debtors' service address is 121 Friends Land, Suite 300, Newtown PA 18940.

[2] Capitalized terms not otherwise defined herein have the definition ascribed in the Motion.

b. authorizing Banks to Honor Related Transfers and to make certain payments to essential postpetition food vendors in the amount of up to $1 million (the "**Critical Operating Expenses**").

The Interim Hearing having been held by this Court on February 24, 2023; and upon the record made by the Debtors at the Interim Hearing (including, without limitation, the First Day Declaration); any objections or comments raised at the Interim Hearing by the U.S. Trustee; and this Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and it appearing that the interim relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; and after due deliberation and consideration and sufficient cause appearing therefor,

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

1. On February 22, 2023 (the "**Petition Date**"), the Debtors filed their voluntary petitions under chapter 11 of the United States Bankruptcy Code.

2. The Debtors are in possession of their property and continue to operate and manage their businesses as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3. *The Motion*. The Motion is granted on an interim basis solely as set forth herein (this "**Interim Order**"). Any objection to the Motion to the extent not withdrawn or resolved herein is hereby overruled.

4. *Jurisdiction*. This Court has core jurisdiction over the cases commenced on the Petition Date, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The predicates for relief granted pursuant to this Order are sections 105(a), 362, 363, 364, 503, and 507 of the Bankruptcy Code, Rules 6003 and 6004 of the Bankruptcy Rules, and Rules 4001-1, 4002-1, and 9013-1 of the Bankruptcy Local Rules. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. *Committee Formation*. A statutory committee of unsecured creditors (if appointed, the

"**Committee**") has not been appointed in the Cases.

6. *Notice*. Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors as set forth in Paragraph 30 of the Motion.

7. *Loan Documents and Prepetition Indebtedness to SSCP.*

a. The Debtors assert that they are party to that certain *Credit and Guaranty Agreement* dated as of November 10, 2017 (the "**Credit Agreement**") by and among CBC Restaurant Corp., a Delaware corporation ("**CBC**"), Corner Bakery Holding Company (f/k/a IFCB Holding Corporation), a Delaware corporation ("**Holdings**"), and certain subsidiaries of CBC, as Guarantors (Holdings and such other Guarantors, and together with Company, each a ("**Credit Party**") and collectively, the ("**Credit Parties**"), the Lenders party thereto from time to time and SSCP Restaurant Investors LLC ("SSCP") as the successor by assignment from Goldman Sachs Specialty Lending Group, L.P., as Administrative Agent and Collateral Agent. The Debtors further assert that certain Credit Parties entered also entered into that certain *Pledge and Security Agreement* dated as of November 10, 2017 (as amended or otherwise modified from time to time, including that certain *Pledge Supplement* dated September 30, 2019, and that certain *Trademark Security Agreement*, also dated as of November 10, 2017, collectively, the "**Security Agreement**")), granted in connection with the Credit Facility (the Credit Agreement, Security Agreement, and all related agreements being the "**Prepetition Agreements**").

b. SSCP asserts that pursuant to the Prepetition Agreements, as of the Petition Date, the Credit Parties (including the Guarantors) owed SSCP not less than $42.5 million. SSCP further asserts that certain monetary and non-monetary defaults existed as of the Petition Date pursuant to the Prepetition Agreements, which had not been cured as of the Petition Date.

c. The Debtors are in the process of investigating the validity of SSCP's prepetition liens, reviewing their books and records, and reconciling all amounts paid and owing under the Credit Facility. As a result, the Debtors have reserved their rights to later challenge, if appropriate, the amount owing to SSCP as well as secured status of any, or all, of SSCP's asserted security interests.

8. *Cash Collateral*. SSCP asserts that, by virtue of the Prepetition Agreements, it possesses valid, perfected, first-priority liens on all or virtually all of the Debtors' assets, wherever located (the "**Collateral**"); accordingly SSCP asserts that, (i) all cash or cash equivalents in the possession or control of the Credit Parties (including the Debtors), wherever located, (ii) any proceeds of the Collateral, and (iii) all other cash subject to the Adequate Protection Liens (defined below) constitute SSCP's "cash collateral" ("**Cash Collateral**") pursuant to the Bankruptcy Code, applicable law, and this Interim Order.

9.      *Use of Cash Collateral*. The terms of the use of Cash Collateral, including the grant of the proposed adequate protection set forth below, are fair and reasonable, proposed in good faith, and reflect the Debtors' exercise of prudent business judgment. The use of Cash Collateral by the Debtors is reasonable and necessary to prevent irreparable injury, loss, or damage to their estates. This Court concludes, and the parties agree, that entry of this Order is in the best interests of the estate at this time because its implementation will, among other things, allow for the continued operation of Debtors' existing businesses and preservation of value for all constituents. At the present time, the Debtors have a need to use Cash Collateral as set forth below.

10.     *Consent of SSCP to Use of Cash Collateral.* SSCP has agreed to the Debtors' use of its Cash Collateral *solely* under the terms set forth in this Interim Order. SSCP reserves all rights to object to the continued use of Cash Collateral, if any, following the expiration of the Term of this Interim Order and/or the occurrence of an Event of Default, as defined below; accordingly, all such rights are reserved.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

11.     **Use of Cash Collateral.**  The Debtors are authorized to use Cash Collateral for the limited purpose of: 1) funding up to $2.4 million for the purposes of paying their regular payroll (not including any insiders, managers, corporate officers, or directors) due on February 24, 2023, as set forth in the accompanying *Motion of the Debtors for Entry of Interim and Final Orders: (1) Authorizing Debtors to Pay Prepetition Employee Obligations, Prepetition Withholding Obligations, and Postpetition Employee Obligations in the Ordinary Course*; *and (2) Authorizing Banks to Honor Related Transfers* and 2) to make certain payments to essential postpetition food vendors in the amount of up to $1 million (the "Critical Operating Expenses") with respect to postpetition food orders and deliveries, subject to proof of usage being provided to SSCP. For the avoidance of doubt, the use of Cash Collateral shall be limited to the aggregate amount of not more

than $3.4 million pursuant to the terms of this Interim Order.

12. **Adequate Protection.** The following adequate protection ("**Adequate Protection**") is provided to SSCP as adequate protection of its asserted pre-Petition Date security interests *nunc pro tunc* to the Petition Date, in each case solely against the Debtors and assets thereof that are encumbered under SSCP's prepetition agreements, including, but not limited to, the Credit Agreement and Security Agreement:

a. The Debtors shall deposit or cause to be deposited all cash and/or proceeds arising from their continued operations, including Cash Collateral, solely in the Checking Account located at Bank of America or the Citizens Bank Operating Account (the "**DIP Bank Accounts**") as described in the *Motion of the Debtors for Entry of Interim and Final Orders: (I) Authorizing the Debtors to (A) Continue to Maintain their Existing Cash Management System, Bank Accounts, and Business Forms, and (B) Honor Certain Prepetition Obligations Related Thereto; and (II) Granting Related Relief* [D.I. 8] (the "**Cash Management Motion**") for use as described in their Cash Management System set forth therein;

b. SSCP shall be deemed to hold executed deposit account control agreements ("**DACAs**") on the DIP Bank Accounts and all other Bank Accounts (as defined in the Cash Management Motion) pending the consolidation of funds in the DIP Bank Account;

c. The Debtors are prohibited from opening, causing to be opened, or utilizing any new bank accounts;

d. Except to the extent permitted by paragraph 11 herein, the Debtors shall not allow any cash and/or proceeds arising from their continued operations, including Cash Collateral, to be used for the benefit of any non-Debtor parties, including non-Debtor affiliated entities;

e. The Debtors shall not allow any cash and/or proceeds arising from the operations of any non-Debtor parties, including non-Debtor affiliated entities, to be deposited in the Bank Accounts, including the DIP Bank Account;

f. The Debtor will work with SSCP in good faith to provide SSCP all information and other reporting contemplated by or under the Prepetition Agreements including, but not limited to, bank statements from the last twelve (12) months for all Bank Accounts used by the Debtors or through which cash and/or proceeds arising from the Debtors' operations flowed at any time, and the Debtors shall comply with all reasonable requests for information or documentation pursuant thereto.

g. .

h. The Debtors shall maintain appropriate and necessary licensing with respect to operating their businesses consistent with prepetition practices.

i. SSCP is hereby granted, from and after the Petition Date, allowed administrative expense claims in an amount not to exceed the Debtors' actual usage of SSCP's cash collateral pursuant to this Order (the "**Cash Collateral Usage**") with priority over any and all administrative expenses, adequate protection claims, and all other claims against the Debtors, now existing or hereinafter arising, of any kind whatsoever, as provided under 507(b) of the Bankruptcy Code;

j. As adequate protection for the use of its Cash Collateral, SSCP is hereby granted, from and after the Petition Date, replacement liens and security interests (the "**Adequate Protection Liens**") in an amount not to exceed the Debtors' Cash Collateral Usage in all accounts and inventory acquired by the Debtors after the Petition Date, specifically including all cash proceeds arising from such accounts and inventory acquired by the Debtors after the Petition Date, in the same nature, extent, priority, and validity that any such liens asserted by SSCP existed on the Petition Date;

k. As of the Petition Date, the Adequate Protection Liens shall be valid, perfected, enforceable and effective against the Debtors, their successors and assigns, including any trustee or receiver in this or any superseding chapter 7 case, without any further action by Debtors or SSCP and without the execution, delivery, filing or recordation of any promissory notes, financing statements, security agreements or other documents. Notwithstanding the foregoing, this Interim Order shall be deemed a security agreement and may be filed as a financing statement and the Debtors shall execute and deliver such notes, security agreements, assignments, financing statements and other documents that SSCP shall reasonably request to further evidence the liens and security interests granted hereby.

l. SSCP shall have all the rights and remedies of a secured creditor in connection with the Adequate Protection Liens granted by this Order in all collateral.

13. **Events of Default**. The following shall constitute events of default under this Interim Order ("**Events of Default**"):

a. Any material failure to comply with the terms of this Interim Order, including, but not limited to, the requirements of paragraphs 12 and all subparagraphs thereof;

b. If a second interim order granting the continued use of SSCP's Cash Collateral by the Debtors or approving postpetition financing is not approved by the Court and entered on or before March 3, 2023 or such later date as is agreed to in writing by the Debtors and SSCP;

c. If any representation made by the Debtors after the commencement of this chapter 11 case in any report or financial statement delivered to SSCP proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading);

d. The Debtors (or any of them) fail to provide SSCP any reports or accounting information when due or access to its books and records within a reasonable time after such access is requestedIf a trustee or examiner, with authority to affect the operation of the business of the Debtors (or any of them) is appointed in the above-enumerated chapter 11 proceedings without the

consent of SSCP;

e. If the bankruptcy cases of the Debtors (or any of them) are converted to a case under chapter 7; or

f. If the bankruptcy cases of the Debtors (or any of them) are dismissed.

14. **Remedies Upon Default**. The authorization to use Cash Collateral granted herein shall automatically and immediately terminate two (2) business days after the provision of written notice to the Debtors (with a copy of such notice provided to counsel for the Debtors and the U.S. Trustee) (the "**Default Notice Period**") of an Event of Default. Upon the occurrence of an Event of Default, the Debtors shall be entitled to an emergency hearing with the Bankruptcy Court to occur within the Default Notice Period. Upon the occurrence of an Event of Default (and following the expiration of the Default Notice Period), the automatic stay provisions of section 362 of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to permit SSCP, as applicable, to exercise all rights and remedies provided in this Order and to take any or all of the following actions, as applicable, without further order of or application to this Court:

a. the immediate termination of the Debtors' use of SSCP's cash collateral; and

b. the entry of an order prohibiting or limiting the Debtors' further use of the SSCP's cash collateral; and,

c. such further or other relief as provided in the Bankruptcy Code, this Interim Order or applicable non-bankruptcy law.

15. The automatic stay under section 362(a) of the Bankruptcy Code shall be automatically vacated and modified as provided in paragraph 14 above, effective following the expiration of the Default Notice Period, unless the Court has determined that an Event of Default has not occurred and/or is not continuing. The rights and remedies of SSCP specified herein are cumulative and not exclusive of any rights or remedies that SSCP may respectively have under the Prepetition Agreements, as applicable, or otherwise. The Debtors shall cooperate fully with SSCP in any

permitted exercise of rights and remedies.

16. **Term**. Unless otherwise ordered by the Court or extended by written agreement between the Debtors and SSCP, the Debtors' right to use Lender's cash collateral hereunder shall commence on the date hereof and expire at 5:00 PM ET on March 3, 2023. Notwithstanding such expiration or other termination, or modification hereof, SSCP shall be entitled to the liens, priorities and other rights provided herein to the extent that the Debtors have used SSCP's cash collateral following the date hereof.

17. **Continuing Effect of Order**. If an order dismissing any of the cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the superpriority claims and the adequate protection liens granted herein shall continue in full force and effect and shall maintain their priorities as provided in this Order until all adequate protection obligations shall have been paid and satisfied in full (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all persons), and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

18. **Modification of Automatic Stay**. The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Order, including, without limitation, to: (a) permit the Debtors to grant the adequate protection liens and incur the superpriority claims; (b) permit the Debtors to perform such acts as may be needed to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations under the terms of this Order; and (d) authorize the Debtors to pay, and the Debtors to retain and apply, any payments made in accordance with the terms of this Order.

19. **Notice and Hearing; Reservation of Rights to Object**. A final hearing (the "**Final Hearing**") shall be scheduled for March 3, 2023, subject to the Court's availabillity, to consider further relief. This Interim Order shall be binding upon, and inure to the benefit of SSCP, the Debtors, any official committee(s) that may be appointed and their respective successors and assigns including, without limitation, any trustee appointed in this chapter 11 case or any superseding chapter 7 case.

20. **Notices**. Except as otherwise stated herein, all notices and demands hereunder shall be in writing and shall be deemed given when addressed as follows: to the Debtors: Jay Pandya at jaypandya@rohangroup.net and counsel Mette H. Kurth at MKurth@cm.law and Lynnette R. Warman at LWarman@cm.law; and to SSCP: Ken Schwab at KSchwab@sscpmanagment.com and counsel Holland N. O'Neil at HOneil@foley.com, MMoore@foley.com and SAJones@foley.com on the earlier of (a) when they are actually delivered to the addressees by hand delivery, facsimile transmission, e-mail or otherwise, or (b) at 11:00 a.m. Dallas time on the Banking Day next following the deposit thereof with any recognized national overnight delivery service properly addressed to the addressees.

21. **Other.** The findings of fact and conclusions of law of this Court pursuant to this Interim Order shall be deemed effective upon the entry of this Order. To the extent that such findings may constitute conclusions, and vice versa, they hereby are deemed such.

22. To the extent necessary, the Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm. To the extent applicable, the requirements of Bankruptcy Rule 6004(a) are waived. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

23. This Interim Order is immediately valid and fully effective upon its entry by the Court.

24. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

25. This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

26. The hearing to consider entry of an order granting the relief requested in the Motion on a final basis shall be held on _____, **2023 at \_\_:00 \_.m. (EST)**; and any objections to entry of such order shall be in writing, filed with this Court, and served upon (i) counsel to the Debtors, (ii) the Secured Creditors, (iii) the U.S. Trustee, and (iv) counsel for any statutory committee appointed in these Chapter 11 Cases, in each case so as to be received no later than **4:00 p.m. (EST) on** _____**, 2023.**