# **Exhibit 1**

DocuSign Envelope ID: A858F206-9CAA-4D51-B61C-52CE32B0E50A




# AMENDED ENGAGEMENT AGREEMENT

## CR3 PARTNERS, LLC
## and
## CBC Restaurant Corp

The parties to this Amended Engagement Agreement (the "Agreement") are CR3 Partners, LLC ("CR3"), on the one hand, and CBC Restaurant Corp., Corner Bakery Holding Company and CBD Cardco, Inc. the "Company"), on the other hand. This Agreement confirms the Company's retention of CR3 for the purpose of providing **Greg Baracato** to serve as a chief restructuring officer for the Company and, subject to the Company's approval, other personnel as needed from time to time to support the CRO and amends and restates the Engagement Agreement between the parties dated as of March 17, 2023.

1. **CR3's Services.** From the date hereof until this Agreement is terminated pursuant to paragraph 8 (the "Term"), CR3 will provide services to the Company as described in the attached Exhibit A ("Work Authorization"), incorporated herein by this reference. The Work Authorization may be amended from time to time with the written approval of CR3 and Company. The services CR3 provides pursuant to this Agreement will be limited to those services that the Company may request within the scope of the Work Authorization. Any additional services that CR3 may agree to provide to the Company will be the subject of a separate agreement between CR3 and the Company. CR3 may, without the Company's consent, provide advisory services for other persons or entities whose interests may be adverse to the Company's or its affiliates in matters not substantially related to our engagement by the Company.

2. **Compensation**. CR3 will present a staffing report to the Company each month for services performed, and expenses incurred, under this Agreement for the preceding month. The staffing reports will provide information on CR3's compensation for such month and the names, job classifications, billing rates, and functional areas of the CR3 professionals performing the engagement. The staffing reports will further summarize hours worked by activity category (*e.g.*, financial management, operational management, hearings, etc.) and reimbursable expenses by expense category. Each staffing report will be due upon presentment to the Company, subject to any orders on compensation entered by the Bankruptcy Court.

3. **Expense Reimbursement**. Each month the Company shall reimburse CR3 for all reasonable travel-related expenses incurred in connection with this engagement, if any. The Company will be billed for out-of-pocket administrative expenses such as postage, overnight delivery, copying, printing, research charges, telephone conferences, etc. CR3 shall provide monthly itemized summaries of expenses for which reimbursement is requested by CR3.

4. **Payments Generally**. No amount payable to any third party, by the Company or any other person or entity in connection with the subject matter of this engagement shall reduce or otherwise affect any amount payable hereunder, unless consented to by CR3 CR3 will submit invoices for fees and expenses to the Company, and the Company will pay such invoices promptly following receipt.

5. **Indemnification and Related Matters**. The Company and CR3 agree to the provisions of the attached Exhibit B, incorporated herein by this reference, which relates to indemnification and related matters.

6. **Information and Reliance**. During the Term, the Company will furnish CR3 with such information regarding the business, financial condition and prospects of the Company as CR3 reasonably requests, all of which will be accurate and complete in all material respects at the time furnished, other than projections, which will be prepared in good faith and based upon assumptions which, in light of the circumstances under which they are made, are reasonable. During the Term, the Company will promptly notify CR3 if it learns of any material misstatement in, or material omission from, any information previously delivered to CR3. On an ongoing basis during the Term, the Company will inform CR3 of any material developments or matters affecting the business, financial condition and prospects of the Company that occur. In performing its services hereunder, CR3 shall be entitled to rely without investigation upon the accuracy of all information supplied to it by or on behalf of the Company or its advisors, and CR3 shall not in any respect be responsible for independently verifying the accuracy or completeness of any of such information (including by conducting any independent due diligence review).

   The Company acknowledges that no reliance shall be placed on draft reports, conclusions or advice, whether oral or written, issued by CR3 as the same may be subject to further work, revision and other factors which may result in such drafts being substantially different from any final report or advice issued.

   The Company shall retain exclusive rights to ownership of all work output hereunder. Work output includes reports issued pursuant to any Work Authorization, but excludes, among other things, all working papers of CR3 and any correspondence, memoranda, calculations, notes, etc. that CR3 may have used in the development of the reports above or such working papers or in the performance of any work covered by a Work Authorization.

   Upon termination of the engagement, papers and property that you have provided to CR3 will be returned to you. Copies of papers CR3 has created for you, which you may need but no longer have, will be made available to you. CR3 reserves the right to destroy any items described in this paragraph that CR3 retains.

7. **Governing Law; Venue; Waiver of Jury Trial**. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed and construed in accordance with the laws of the State of Delaware (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the United States Bankruptcy Court for the District of Delaware, and each of the Company and CR3 hereby submits on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) any and all right to argue that this choice of forum provision is or has become unreasonable. The Company hereby waives on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement or the engagement of CR3 pursuant to, or the performance by CR3 of the services contemplated by, this Agreement.

DocuSign Envelope ID: A858F206-9CAA-4D51-B61C-52CE32B0E50A

8. **Termination**. This Agreement may be terminated at any time by CR3 or the Company by giving written notice to the other party, which termination will be effective upon the non-terminating party's receipt of such notice. Upon termination the Company shall pay CR3 all monthly fees and expenses due through the termination date. The provisions of this Section and of Sections 2, 3, 5, 6, 7, 9, 10, 12 and 13 will survive any expiration or termination of this engagement.

9. **Personnel.** Each party hereto agrees that it will not employ personnel or representatives of the other party hereto during the period of work provided for hereunder and for a period of one (1) year after the termination of this Agreement or completion of the project or work contemplated hereunder without the written agreement of the other party. In cases where written permission is granted by CR3, a recruiting fee will be billed for an amount mutually agreed upon and not less than 33% of first year expected annual cash compensation including incentive payments.

10. **Public Announcements**. Notwithstanding the confidentially provisions of Section 13, the Company acknowledges and agrees that CR3 may publish an announcement or "tombstone" following the completion of its engagement, either in newspapers, journals, magazines, or other publications or by direct mailings to third parties, whereby CR3 informs the public or such parties of the fact of its engagement by the Company, the general nature of the services provided by CR3, the time period of such engagement, the general nature of the business or industry in which the Company is engaged, the relative size in financial terms of the Company, and similar information that generally describes the nature and extent of CR3's engagement by the Company.

11. **Relationship of Parties; No Fiduciary Obligation**. The Company and CR3 acknowledge and agree that CR3 has been retained under this Agreement as an independent contractor to the Company, that their respective rights and obligations are contractual in nature and that nothing herein is intended to confer any rights or remedies upon any person other than the Company (including the management, board of directors (or similar governing body) and securityholders of the Company) as against CR3. In addition, it is understood and agreed that this Agreement and CR3's engagement do not create a fiduciary relationship between CR3 and any person (including the Company, its management, its board of directors (or similar governing body) and its securityholders), and the Company disclaims any intention to impose any fiduciary or other non-contractual obligations on CR3. Any advice or opinion, whether written or oral, provided by CR3 is intended solely for the benefit and use of the members of the board of directors (or similar governing body) of the Company (in their capacities as such) in considering the matters to which this Agreement relates. CR3 will not be responsible for and will not be deemed to have provided the Company with any tax, accounting, actuarial, legal or other specialist advice. CR3 will not, as part of any aspect of this engagement, undertake any independent valuation or appraisal of, or provide any formal opinion regarding, any assets, liabilities or the solvency of the Company or any other entity. This Agreement does not constitute a representation, warranty or agreement that a specific outcome or outcomes will be obtained.

12. **Miscellaneous**. This Agreement may not be assigned (other than by operation of law) by either party without the prior written consent of the other. The provisions hereof shall inure to the benefit of and be binding upon the successors, assigns, heirs and personal representatives of the Company, CR3 and any person entitled to indemnity under the terms of Exhibit B. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or

provision in any other situation or in any other jurisdiction. This Agreement, including the Exhibits hereto (which are hereby incorporated by reference in this Agreement), incorporates the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement may be executed in any number of counterparts, each of which may contain one or more signatures and each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Copies of this Agreement with facsimile or electronic signatures and copies of this Agreement (or pages hereof) that have been transmitted electronically (e.g., by fax or .pdf) shall be deemed to be original signed versions of this Agreement.

13. **Confidentiality**. CR3 shall use all confidential information provided to it by or on behalf of the Company in connection with CR3's engagement hereunder (the "Confidential Information") solely for the purpose of providing the services which are the subject of this Agreement, and, except as contemplated in connection with such services and CR3's engagement hereunder, shall keep all Confidential Information confidential; provided, however, that nothing herein shall prevent CR3 or any of its Agents (as defined below) from disclosing any Confidential Information (i) pursuant to the order of any court or administrative agency or in any pending legal or administrative proceeding, or otherwise as required by applicable law, rule or regulation or legal or administrative process, (ii) upon the request or demand of any regulatory authority having jurisdiction over CR3 or any of its Agents, (iii) to CR3's or its affiliates' officers, directors, employees, legal counsel, independent auditors and other experts or agents who need to know such information and are informed of the confidential nature of such information, (iv) to any of its affiliates (any of the persons described in clauses (iii) or (iv) to whom Confidential Information is disclosed, "Agents") or (v) for purposes of establishing a "due diligence" defense. The term Confidential Information does not include information that (A) is or becomes publicly available other than by reason of disclosure by CR3 in violation of this Section 13; (B) was in the possession of CR3 at the time of its disclosure by or on behalf of the Company; (C) is acquired from a third party that is not, to CR3's knowledge, prohibited from disclosing such information by an obligation of confidentiality to the Company; or (D) is developed without reference to the Confidential Information. This Section 13 and the obligations hereunder shall survive the expiration or termination of this engagement for a period of one year and shall then terminate.

*[Signature page follows.]*

Agreed to this 30th day of March 2023 by:

**CBC Restaurant Corp:**

DocuSigned by:
By: Nicholas Rubin
2EF590A7F6AC4D2...
Name: Nicholas Rubin
Title: Chairman of the Executive Committee

**CR3 PARTNERS, LLC:**

DocuSigned by:
By: Greg Baracato
824329BF8E6B471...
Name: Greg Baracato
Title: Partner

**EXHIBIT A**
**to**
**ENGAGEMENT AGREEMENT**

**CR3 PARTNERS, LLC**
**and**
**CBC Restaurant Corp**

**WORK AUTHORIZATION**

1. **CRO Services** – Provide the Company the services of Greg Baracato, as Chief Restructuring Officer ("CRO"), who will report to the Executive Committee of the Company's Board of Directors and be supported by both the CR3 engagement team and the Company's personnel, as applicable, and perform the following services:

    a. Manage the bankruptcy process and coordinate with case professionals;
    b. Manage and control cash, including as the account signatory;
    c. Provide leadership to the daily operation of the Company;
    d. Establish a communication protocol with stakeholders; including working with the Companies' employees, professionals, lenders, landlords, creditors or other stakeholders;
    e. Lead the preparation of financial projections and cash flow budgets, including implementing cash conservation strategies, tactics and processes where appropriate and feasible;
    f. Provide financial reporting to the Company's lenders.
    g. Identify liquidity needs and assist the management team in soliciting and negotiating DIP financing;
    h. Assist in management of any sale or liquidation process of the assets of the Company and the closing of such sale of assets;
    i. Assist in Bankruptcy reporting as required:
        i. Preparation of Statements of Financial Affairs and Schedules of Assets and Liabilities
        ii. Preparation of Monthly Operating Reports
    j. Assist counsel and provide testimony in bankruptcy legal proceedings;
    k. Negotiate with creditors and other constituents of the Company concerning restructuring of debt, a plan of reorganization and/or a plan of liquidation and assist management in obtaining confirmation of a plan or reorganization; and
    l. Provide such other similar services as may be requested by the Company and agreed to by CR3, in keeping with our ethical responsibilities.

2. **Professionals and Rates** – Greg Baracato will be primarily responsible for the engagement as Chief Restructuring Officer. However, during the course of this engagement, subject to the Company's approval, we may call upon other CR3 professionals, as needed. CR3 will not charge for monthly fees in excess of $75,000 without Company approval. Our current billing rates are as follows:

| | |
|---|---|
| Greg Baracato (Chief Restructuring Officer) | $ 795/hr. |
| Partners: | $ 795/hr. - $995/hr. |
| Directors and Managers: | $ 450/hr. - $795/hr. |
| Senior Associates: | $ 375/hr. - $425/hr. |

3. **Other Conditions** – The engagement is effective upon the execution of this Agreement by both CR3 and the Company.

(a) Simultaneously with the execution of this Agreement, the Company shall provide CR3 with a resolution of the Company's board of directors which appoints the CRO as an officer of the Company.

(b) Simultaneously with the execution of this Agreement, the Company shall cause the issuer of its directors and officers liability insurance to provide the CRO and CR3 with an endorsement (i) showing the CRO and CR3 as an additional insured with regard to the directors and officers liability insurance and any fiduciary liability insurance and (ii) providing that thirty (30) days' notice will be given to the CRO and CR3 prior to any cancellation of, material reduction or change in the coverage provided by or other material modification to such policy. A certificate of issuance evidencing such coverage shall be furnished promptly to the CRO and CR3 at its request. The Company shall purchase a "tail" on such directors and officers insurance policy upon the request of CR3 at the conclusion of the Engagement. Regardless, the Company shall also maintain such applicable insurance coverage for the CRO and CR3 for a period of not less than six (6) years following the date of termination of the Services.

(b) The Company represents and warrants to CR3 that its bylaws or Operating Agreement provide for indemnification by the Company of its officers in the manner provided therein. The Company covenants and agrees not to amend or modify such bylaws or Operating Agreement insofar as they provide indemnification to the CRO without CR3's prior written consent.

(c) If CR3 is engaged in a chapter 11 as CRO, this engagement does not preclude CR3 from serving as a consulting or testifying expert on behalf of the Company or other estate fiduciary such as a liquidating trustee if circumstances warrant after the conclusion of CR3's engagement.

**EXHIBIT B**
**to**
**ENGAGEMENT AGREEMENT**

**CR3 PARTNERS, LLC**
**and**
**CBC Restaurant Corp**

**INDEMNIFICATION AND RELATED MATTERS**

The Company agrees to indemnify and hold harmless each of CR3, its affiliates and their respective directors, officers, employees, agents, shareholders, controlling persons, partners, and members and each of their respective successors and assigns (each, an "Indemnified Person") against and from all losses, claims, damages, liabilities or expenses, joint or several, and all actions, claims, proceedings and investigations brought or threatened by or on behalf of any person (including Company Claims (as defined below)) arising out of, relating to or in connection with this Agreement or CR3's engagement hereunder (collectively, "Indemnification Claims"), and to promptly reimburse each Indemnified Person for all reasonable legal and other expenses as incurred by such Indemnified Person in connection with investigating, preparing to defend or defending any such Indemnification Claims (including expenses of CR3 personnel required to testify or otherwise assist in any litigation), whether or not such Indemnified Person is named as a party thereto; provided, however, that the Company shall not be liable for Indemnification Claims to the extent that such claims are finally determined (not subject to judicial review or appeal) to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct. The Company also agrees that (a) no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or the Company's securityholders or creditors arising out of, relating to or in connection with this Agreement or CR3's engagement hereunder (collectively, "Company Claims") except to the extent that such liability is finally determined (not subject to judicial review or appeal) to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct, and (b) in no event will any Indemnified Person have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity). To the extent permitted by applicable law, CR3's liability with respect to Company Claims shall be limited to the amount of any fees actually received by CR3 pursuant to this Agreement. THE INDEMNIFICATION PROVISIONS PROVIDED FOR IN THIS AGREEMENT SHALL BE APPLICABLE WHETHER OR NOT THE LOSSES, COSTS, EXPENSES AND DAMAGES IN QUESTION AROSE SOLELY OR IN PART FROM THE ACTIVE, PASSIVE OR CONCURRENT NEGLIGENCE, OR OTHER FAULT OF INDEMNIFIED PARTIES (OTHER THAN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT), AND THE PARTIES ACKNOWLEDGE THAT THIS PARAGRAPH IS CONSPICUOUS.

In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the Company agrees to make contributions to any such Indemnification Claims paid or payable (or proposed to be paid) in such proportion as is appropriate to reflect the relative economic benefits received by the Company and its securityholders and creditors, on the one hand, and the Indemnified Persons, on the other hand; provided, however, that, to the extent permitted by applicable law, the Company agrees to make contributions to any such Indemnification Claims paid or payable such that in the aggregate the Indemnified Persons will not be liable for more than the fees actually received by CR3 pursuant to

DocuSign Envelope ID: A858F206-9CAA-4D51-B61C-52CE32B0E50A

this Agreement. The "relative economic benefits" received by the Company and its securityholders and creditors, on the one hand, and the Indemnified Persons, on the other hand, shall be deemed to be in the same proportion as is appropriate to reflect the relative economic benefits and the relative fault of the Company and its securityholders and creditors, on the one hand, and the Indemnified Persons, on the other hand, as well as other equitable considerations; provided, however, that, to the extent permitted by applicable law, the Company agrees to make contributions to any such Indemnification Claims paid or payable such that in the aggregate the Indemnified Persons will not be liable for more than the fees actually received by CR3 pursuant to this Agreement.

Promptly after receipt by an Indemnified Person under this Agreement of notice of the commencement of any action, such Indemnified Person shall, if a claim in respect thereof is to be made against the Company under these indemnification provisions, notify the Company in writing of the commencement thereof, but the omission so to notify the Company shall not relieve it from any liability which it may have to any Indemnified Person otherwise than under this Agreement unless the Company has been materially prejudiced by the failure to provide such notice. The Company shall promptly pay expenses reasonably incurred by any Indemnified Person in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Person is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under this Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Person hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Person is not entitled to be indemnified therefor. If any such action, proceeding or investigation in which an Indemnified Person is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Person, provide such Indemnified Person with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Person, at no cost to such Indemnified Person; provided however, that if such counsel or counsel to the Indemnified Person shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Person and the Company such counsel is unable to represent both the Indemnified Person and the Company, then the Indemnified Person shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor. Nothing herein shall prevent an Indemnified Person from using separate counsel of its own choice at its own expense. The Company further agrees that, without the prior written consent of CR3 (not to be unreasonably withheld, conditioned or delayed), the Company will not settle, compromise or consent to the entry of any judgment in any pending or threatened action, claim, proceeding or investigation with respect to which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is an actual or potential party to such action, claim, proceeding or investigation) unless such settlement, compromise or judgment includes an unconditional release of all Indemnified Persons from all liability resulting from such action, claim, proceeding or investigation.

The foregoing rights shall be in addition to any other rights any Indemnified Person may have, and shall not limit any other rights that any Indemnified Person may have at law or otherwise. These indemnification provisions will (i) apply to CR3's engagement pursuant to this Agreement, (ii) any activities or actions of CR3 relating to such engagement occurring prior to the date of this Agreement, and any subsequent modification of or amendment of this Agreement, and (iii) shall survive any termination of the engagement or this Agreement.