**Exhibit 2-B**

**Blackline**

**Proposed Final Junior DIP Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**CBC RESTAURANT CORP.**, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10245 (KB)<br><br>(Jointly Administered)<br><br>Re: D.I. No. 259 |

## ~~INTERIM~~FINAL ORDER: (I) AUTHORIZING THE DEBTORS TO OBTAIN JUNIOR SECURED POSTPETITION FINANCING; (II) GRANTING LIENS; (III) SCHEDULING A FINAL HEARING; (IV) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an ~~interim~~final order pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2002-1, 4001-1(a), 4001-1(b), 5005-1, and 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") seeking, among other things, entry of an ~~interim~~final order (this "~~Interim~~**Final** Junior DIP Order") providing:

a) authorization for the Debtors, jointly and severally in their capacity as debtors and debtors in possession in the Chapter 11 Cases, as borrowers (the "**Borrowers**" or "Loan Parties") to obtain, junior secured postpetition financing (the "**Junior DIP Facility**") consisting of a junior, secured, debtor-in-possession credit facility which shall consist of a term loan with an aggregate principal amount of $1.5 million from CB DIP LLC (the "**Junior DIP Lender**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include CBC Restaurant Corp. (0801), Corner Bakery Holding Company (3981), and CBC Cardco, Inc. (1938). The Debtors' service address is 121 Friends Lane, Suite 301, Newtown PA 18940.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

b) authorization for the Loan Parties to execute and enter into any other agreements, instruments, pledge agreements, guarantees, security agreements, intellectual property security agreements, notes and other documents reasonably required by the Junior DIP Lender (solely to effectuate the relief granted in this ~~Interim~~Final Junior DIP Order and subject to the approval of the Senior DIP Lender, not to be unreasonably withheld) (collectively, and together with the Orders, the "**Junior DIP Loan Documents**" and all obligations and indebtedness of any of the Debtors to the Junior DIP Lender under the Junior DIP Loan Documents (including, without limitation the Junior DIP Loans), collectively, the "**Junior DIP Obligations**") and to perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the Junior DIP Loan Documents, including, but not limited to, granting or perfecting liens or security interests by any of the Debtors in favor of and for the benefit of the Junior DIP Lender on account of the Junior DIP Facility;

c) the authority and direction for the Loan Parties to use the proceeds of the Junior DIP Facility;

d) the granting to the Junior DIP Lender of liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code on all prepetition and postpetition property of the Junior DIP Loan Parties' estates and all proceeds thereof, excluding any Avoidance Proceeds (as defined below), in each case subject to the Carve Out (as defined below) and with the relative priorities set forth in this ~~Interim~~Final Junior DIP Order;

e) the scheduling of a final hearing (the "**Final Hearing**") to be held within 23 days of the entry of the ~~Interim~~Final Junior DIP Order to consider final approval of the Junior DIP Facility pursuant to a proposed final order (the "**Final Junior DIP Order**," and, together with this ~~Interim~~Final Junior DIP Order, the "**Junior DIP Orders**"), and in connection therewith, giving and prescribing the manner of notice of the Final Hearing on the Motion; and,

f) such other and further relief as is just and proper;

and this Court having considered the Motion, the exhibits attached thereto, the *Declaration of Jignesh Pandya, Chief Executive Officer and Chief Operating Officer of Corner Bakery, in Support of Chapter 11 Petition and Certain First Day Emergency Motions* (the "**First Day Declaration**"), the evidence submitted, and the record made at the Interim Hearing held before this Court on April 5, 2023; and due, proper and sufficient notice of the Motion, having been given in accordance with Bankruptcy Rules 4001(b), (c), and (d) and 9014, and Local Rules 2002-1, 4001- 1(a), 4001-1(b), 5005-4, and 9013-1; and the Interim Hearing to consider the relief requested in the Motion having

3

been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by this Court; and it appearing to this Court that granting the ~~interim~~final relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates (as defined under Bankruptcy Code section 541, the "**Estates**"), and otherwise is fair and reasonable and in the best interests of the Debtors, their Estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

1. The Debtors do not have sufficient liquidity, including Cash Collateral, to operate their business in the ordinary course without the financing requested in the Motion. The Debtors' ability to maintain business relationships with vendors, suppliers, and customers, to pay their employees, pay certain fees and expenses as set forth herein, to pursue a going-concern sale or to implement and consummate a plan of reorganization in these Chapter 11 Cases, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize and preserve the value of their respective Estates for the benefit of all creditors of the Estates.

2. The ability of the Debtors to obtain working capital and liquidity through the proposed Junior DIP Facility with the Junior DIP Lender is vital to the preservation and maintenance of the going concern value of the Debtors and the Debtors' ability to maximize value for all stakeholders. If the Debtors do not obtain authorization to borrow under the Junior DIP Facility, they, and their Estates, will suffer immediate and irreparable harm. Accordingly, the Debtors have an immediate need to obtain the Junior DIP Loans to, among other things, permit the orderly continuation of the operation of their business, minimize the disruption of their business

operations, and preserve and maximize the value of the Debtors' Estates in order to maximize value for all creditors of the Estates.

3. The provision of the Junior DIP Facility by the Junior DIP Lender was a necessary precondition to a) the provision of a senior secured postpetition financing facility consisting of a superpriority debtor-in-possession credit facility (the "**Senior DIP Facility**") from SSCP Restaurant Investors LLC (the "**Senior DIP Lender**"), the Debtors prepetition senior secured lender under certain prepetition agreements (in such role, the "**Prepetition Lender**"), and b) the continued use of the Prepetition Lender's Cash Collateral. Contemporaneously herewith, the Court has approved and entered a final ~~an interim~~ order approving the Senior DIP Facility (the "~~Interim~~**Final Senior DIP Order**"), which provides, among other things, that all liens and claims of the Prepetition Lender and the Senior DIP Lender, as applicable, are senior and superior to any liens and claims of the Junior DIP Lender, including, but not limited to, all liens and claims (if any) granted pursuant to this ~~Interim~~Final Junior DIP Order. As set forth below, to the extent of any conflict between the ~~Interim~~Final Senior DIP Order and this ~~Interim~~Final Junior DIP Order, the ~~Interim~~Final Senior DIP Order controls.

4. As demonstrated at the Interim Hearing, given their current financial condition, financing arrangements, and capital structure, the Debtors have been unable to procure the necessary financing from sources other than the Junior DIP Lender on terms more favorable than those set forth in the Junior DIP Loan Documents (except with respect to the Senior DIP Loans). The Debtors have been unable to reasonably obtain adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain sufficient secured credit from other sources: (a) having priority over that of administrative expenses of the kind specified in Bankruptcy Code sections 503(b), 507(a), and

507(b); (b) secured only by a lien on property of the Debtors and their Estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their Estates that is subject to a lien. Sufficient financing on a postpetition basis is not otherwise available without granting to the Junior DIP Lender: (x) automatically perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after- acquired assets with the priorities set forth herein; and (y) the other protections to the extent set forth in this ~~Interim~~Final Junior DIP Order. After considering all reasonable alternatives, the Debtors have concluded, in the exercise of their sound and reasonable business judgment, that the Junior DIP Facility, including, without limitation, the Junior DIP Loans, represents the best financing available to them at this time.

5. Based on the Motion, the First Day Declaration, and the record presented to the Court at the Interim Hearing, the terms and conditions of the Junior DIP Facility pursuant to the Junior DIP Loan Documents pursuant to this ~~Interim~~Final Junior DIP Order are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and consideration, and were entered into at arm's-length, under no duress, and without undue influence, negligence, or violation of public policy or law. Use of Cash Collateral and any credit to be extended as set forth in the Junior DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, and for valid business purposes and uses, within the meaning of Bankruptcy Code section 364(e), and the Junior DIP Lender is therefore entitled to the protections and benefits of Bankruptcy Code section 364(e) and this ~~Interim~~Final Junior DIP Order.

6. The terms and conditions of the Junior DIP Loan Documents, including this ~~Interim~~Final Junior DIP Order, the provision of the Junior DIP Facility, were negotiated in good faith and at arm's length among the Debtors and the Junior DIP Lender with the assistance and counsel of their respective advisors. Credit to be extended under the Junior DIP Facility shall be deemed to have been allowed, made, or extended in good faith by the Junior DIP Lender within the meaning of section 364(e) of the Bankruptcy Code.

7. Good and sufficient cause has been shown for entry of this ~~Interim~~Final Junior DIP Order. The ability of the Debtors to obtain sufficient working capital and liquidity is vital to the Debtors' Estates and creditors. The relief requested in the Motion is necessary, essential, and appropriate, and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' business and ongoing operations, (b) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (c) maximize and stabilize the value of the Debtors' assets and avoid immediate and irreparable harm to the Debtors, their creditors, their business, their employees, and their assets. The terms of the Junior DIP Facility are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration.

8. At the Final Hearing, the Debtors will seek final approval of the proposed Junior DIP Facility, which shall be in form and substance reasonably acceptable to the Junior DIP Lender. Notice of the Final Hearing and Final Junior DIP Order will be provided in accordance with this ~~Interim~~Final Junior DIP Order and no further notice, except as provided by this ~~Interim~~Final Junior DIP Order, shall be required.

9. Notice of the ~~Interim~~Final Hearing and the emergency relief requested in the Motion has been provided by the Debtors via email, overnight courier, hand delivery, United States mail, first-class postage prepaid, or through the Electronic Case Filing system, upon: (a) the Debtors, Attn: Jay Pandya at jaypandya@rohangroup.net; (b) the Debtors' proposed counsel, Mette H. Kurth at MKurth@cm.law and Lynnette R. Warman at LWarman@cm.law; (c) SSCP, the Debtor's prepetition lender, Ken Schwab (kschwab@sscpmanagement.com); (d) counsel to SSCP, Foley & Lardner LLP, 2021 McKinney Avenue, Suite 1600, Dallas, TX. 75201, Attn: Holland N. O'Neil (honeil@foley.com), Mark C. Moore (mmoore@foley.com), and Timothy Mohan (tmohan@foley.com and Ashby & Geddes, P.A, 500 Delaware Avenue, 8th Floor, P.O. Box 1150, Wilmington, DE. 19899, Attn: Ricardo Palacio (RPalacio@ashbygeddes.com); (e) the Office of the United States Trustee for the District of Delaware, Attn: Linda Casey (Linda.Casey@usdoj.gov); (f) Counsel for the Committee, Tucker Ellis LLP, 233 S. Wacker Dr., Suite 6950, Chicago, IL 60606-9997, Attn: Jason M. Torf (jason.torf@tuckerellis.com) and Thomas R. Fawkes (thomas.fawkes@tuckerellis.com), and Potter Anderson & Corroon, LLP, 1313 N. Market St., 6th Floor, P.O. Box 951, Wilmington, DE 19801, Attn: Christopher Samis (csamis@potteranderson.com); (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; (i) the office of the attorneys general for the states in which the Debtors operate; (j) financial institutions where the Debtors hold bank accounts. and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002. The notice given by the Debtors of the Motion, the relief requested therein, and the Interim Hearing complies with Bankruptcy Rules 4001(b) and (c) and the Local Rules.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1. *Motion Approved.* The Motion is granted on an ~~interim~~ final basis solely as set forth in this ~~Interim~~Final Junior DIP Order. All objections to and reservations of rights with respect to the Motion and to the entry of this ~~Interim~~Final Junior DIP Order to the extent not withdrawn or resolved are hereby overruled on the merits in their entirety.

2. *Authorization of the Junior DIP Loans and the Junior DIP Loan Documents.*

   a) The Junior DIP Facility is hereby approved on an ~~interim~~ final basis as follows. Pending entry of the Final Junior DIP Order, the Debtors are hereby authorized to borrow money, on an ~~interim~~final basis and in accordance with the terms of this ~~Interim~~Final Junior DIP Order, in an aggregate principal amount of up to $1,500,000. Upon entry of the Final Junior DIP Order, the Debtors may draw such amounts as are necessary and agreed to by the Junior DIP Lender subject to the conditions set forth in Junior DIP Orders. In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute, and deliver all instruments and documents that may be necessary or required for the creation and perfection of the Junior DIP Liens described in, provided for, and automatically perfected by this ~~Interim~~Final Junior DIP Order.

   b) The Debtors are authorized, subject to the satisfaction of the conditions set forth in this ~~Interim~~Final Junior DIP Order, to use proceeds of the Junior DIP Collateral, subject to the Carve Out, and to draw upon the Junior DIP Facility to (a) pay administrative costs incurred in connection with the Chapter 11 Cases; (b) pay for other working capital and general corporate purposes of the Debtors consistent with the Approved Budget, which shall be subject to the "first day" orders entered by the Court; and (c) after delivery of a Carve Out Trigger Notice (as defined below), fund the Carve Out Reserves (as defined below) as provided for in paragraph 5.

3. *Interest Rate.* The Debtors are hereby authorized to pay, in accordance with this ~~Interim~~Final Junior DIP Order, principal, interest in the amount of 15% per annum, and other amounts described in the Junior DIP Term Sheet as such become due and without need to obtain further Court approval. After the occurrence and during the continuation of an Event of Default under the Junior DIP Orders (as defined below), interest on the Junior DIP Loans shall accrue at the Default Interest Rate, which shall be the Interest Rate plus 5.00% per annum.

4. *Junior DIP Liens and Junior DIP Collateral*. As security for the Junior DIP Obligations, effective and perfected automatically upon entry of this ~~Interim~~Final Junior DIP Order, pursuant to Bankruptcy Code sections 364(c)(2), 364(c)(3), and 364(d), and without the necessity of the execution by the Debtors (or recordation or other filing or notice) of security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control by the Junior DIP Lender of any property, the Junior DIP Lender is hereby granted junior security interests in and liens and mortgages, which shall be junior and subordinate to the Senior Liens (defined below) upon all tangible and intangible prepetition and postpetition property in which any or each of the Debtors or their respective Estates have an interest of any kind or nature (excluding causes of action of any kind, including Avoidance Actions (as defined in the Final Junior DIP Order), whether existing on or as of the Petition Date or thereafter acquired or created, wherever located, including, without limitation, the proceeds, products, and offspring of any of the foregoing (the "**Junior DIP Collateral**"), subject and subordinate to the Carve Out and the Senior Liens (defined below) (all such liens and security interests of the Junior DIP Lender being the "**Junior DIP Liens**"), as follows:

    a. *Junior Lien on Unencumbered Property*. Pursuant to Bankruptcy Code section 364(c)(2), a valid, binding, continuing, enforceable, fully perfected junior (to the liens of the Prepetition Lender and/or Senior DIP Lender, as applicable) lien on, and security interest in, all property of the Debtors, wherever located, that is not subject to a valid, perfected, non-avoidable and enforceable lien in existence on or as of the Petition Date or valid liens perfected (but not granted) after the Petition Date to the extent such postpetition perfection is permitted by Bankruptcy Code section 546(b), including, but not limited to: (i) any and all unencumbered cash, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real property, real property leaseholds, fixtures, machinery, equipment, vehicles, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property; and (ii) the proceeds, products and offspring of all of the foregoing.

    b. *Liens Junior to Liens of the Senior DIP Lender and Prepetition Lender*. Pursuant to Bankruptcy Code section 364(c)(3), a valid, binding, continuing,

enforceable, fully perfected junior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Debtors subject to the Senior Liens (defined below).

c. *Liens Junior to Certain Other Liens*. Pursuant to Bankruptcy Code section 364(c)(3), a valid, binding, continuing, enforceable, fully perfected junior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Debtors that, on or as of the Petition Date (including pursuant to Bankruptcy Code section 546(b)), is subject to those valid, perfected and unavoidable liens senior to the Prepetition Liens of the Prepetition Lender, if any, that are senior to the Prepetition Liens (the "Permitted Liens").

d. *Limitation on Liens on Leases*. Notwithstanding anything to the contrary herein and for the avoidance of doubt, none of the Junior DIP Liens granted pursuant to this ~~Interim~~Final Junior DIP Order shall attached to the Debtors' real property leaseholds but shall attach solely to the proceeds of such leases.

5. *Carve Out*.

    a. As used in this ~~Interim~~Final Junior DIP Order, the "**Carve Out**" means the sum of:

        (i) all fees required to be paid to the Clerk of the Court, or any claims and noticing agent acting in such capacity, and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the Termination Declaration Date (defined below));

        (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code;

        (iii) all accrued and unpaid fees, disbursements, costs, and expenses (the "**Allowed Professional Fees**") incurred by professionals or professional firms retained by the Debtor or its estate pursuant to sections 327, 328 or 363 of the Bankruptcy Code and the Committee (collectively, the "**Professionals**" or "**Professional Persons**"), which Allowed Professional Fees: (x) are allowed by this Court, at any time, whether by ~~interim~~final order, procedural order, or otherwise; (y) were incurred (regardless of when invoiced or applied for) on or after the Petition Date, and prior to the Termination Declaration Date (defined below);

        (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $50,000.00 for all such Professionals (for the avoidance of doubt, in the aggregate and, not on a professional-by-professional basis), incurred after the first business day following delivery by the Junior DIP Lender of the Carve Out Trigger Notice,

11

        to the extent allowed at any time, whether by ~~interim~~final order, procedural order, or otherwise (the "**Post-Carve Out Trigger Notice Cap**").

    b. For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the Junior DIP Lender to the Debtors, their restructuring counsel, the U.S. Trustee, counsel to the Senior DIP Lender and Prepetition Lender, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the Junior DIP Obligations under the Junior DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

    c. *Payment of Carve Out On or After the Termination Declaration Date.* Any payment or reimbursement made on or after the delivery to the Debtors of Carve Out Trigger Notice in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to, and made a part of, the Junior DIP Obligations secured by the Junior DIP Collateral and shall be otherwise entitled to the protections granted under this ~~Interim~~Final Junior DIP Order, the Junior DIP Documents, the Bankruptcy Code, and applicable law.

    d. *Prohibition on Use of Carve Out.* Notwithstanding the foregoing, the Carve Out shall not include, apply to, or be available for any fees or expenses incurred by any party in connection with; (i) attempts to modify any of the rights granted to the Junior DIP Lender; or (ii) attempts to prevent, hinder, or otherwise delay any of the Junior DIP Lender's assertion, enforcement, or realization upon any Junior DIP Collateral, as applicable, in accordance with the Junior DIP Loan Documents, this ~~Interim~~Final Junior DIP Order, and the Final Junior DIP Order.

6. *Priority of the Junior DIP Liens Versus the Senior Liens.* Notwithstanding anything to the contrary herein, all Junior DIP Liens shall be expressly junior and subordinate to any liens or security interests of the Senior DIP Lender and Prepetition Lender including, but not limited to, 1) the Senior DIP Liens granted in connection with the Senior DIP Facility, 2) the Adequate Protection Liens (as defined in the Senior ~~Interim~~Final DIP Order and any final order entered in connection therewith), and 2) the Prepetition Liens of the Prepetition Lender (as defined in the Senior ~~Interim~~Final DIP Order and any final order entered in connection therewith). For the

purposes of this Order, all such liens of the Senior DIP Lender and Prepetition Lender are defined as the "**Senior Liens**."

7. *Perfection of Junior DIP Liens*. This ~~Interim~~Final Junior DIP Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the Junior DIP Liens, without the necessity of filing or recording financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, taking possession of or control over, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Junior DIP, or to entitle the Junior DIP Lender to the priorities granted herein. Notwithstanding the foregoing, the Junior DIP Lender is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, taking possession of or control over, or take any other action, as they may elect, in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the Junior DIP Lender chooses to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute, or subordination immediately upon entry of this ~~Interim~~Final Junior DIP Order. A certified copy of this ~~Interim~~Final Junior DIP Order may, in the discretion of the Junior DIP Lender, as the case may be, be filed with any filing or recording office or with any registry of deeds or similar office, and accordingly, each officer is authorized to accept such certified copy of this ~~Interim~~Final Junior DIP Order for filing and recording.

8. *Evidence of Liens*.  The Debtors shall execute and deliver promptly to the Junior DIP Lender all such financing statements, mortgages, control agreements, notices, and other documents as the Junior DIP Lender may reasonably request to evidence, confirm, validate, or perfect the Junior DIP Liens.

9. *Enforceability of Junior DIP Obligations*.  Subject to entry of the Final Junior DIP Order, if any or all of the provisions of this ~~Interim~~Final Junior DIP Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacatur shall not affect (a) the validity, priority, or enforceability of any Junior DIP Obligations incurred prior to the effective date of such reversal, stay, modification, or vacatur or (b) the validity, priority, or enforceability of the Junior DIP Liens.  Notwithstanding any such reversal, stay, modification, or vacatur, any Junior DIP Obligations incurred by the Debtors to the Junior DIP Lender prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions of this ~~Interim~~Final Junior DIP Order.

10. *Maturity Date*.  The Junior DIP Facility shall mature and be due and payable upon the earliest to occur of (i) June 15, 2023, (ii) the closing date of any Section 363 sale for all or substantially all of the Debtors' assets and the authorization by the Bankruptcy Court to pay the sale proceeds to the Junior DIP Lender, (iii) the Effective Date of a plan of reorganization or liquidation filed in the Chapter 11 Cases that is confirmed pursuant to an order entered by the Bankruptcy Court, and (iv) the date of acceleration of the Junior DIP Loans.

11. *Events of Default*.  Subject to any applicable cure or any notice period set forth below, if any, the Debtors' right to use proceeds of the Junior DIP Facility shall terminate without prior order of this Court or any further action by the Junior DIP Lender, unless waived by the

Junior DIP Lender in writing, on the earliest to occur of (each, an "**Event of Default**", and the date of any such Event of Default, the "**Junior DIP Termination Date**"):

  a. failure to pay principal or interest on the Junior DIP Loans or any fees under the Junior DIP Facility when due;

  b. the Junior DIP Lender shall cease to have a valid and perfected security interest in and lien on any Junior DIP Collateral;

  c. any Loan Party shall contest the validity or perfection of the liens and security interests securing the Junior DIP Loans;

  d. any attempt by any Debtor to invalidate or otherwise impair the Junior DIP Loans or the liens granted to the Junior DIP Lender with respect to the Junior DIP Loans;

  e. failure by any Debtor to comply in any material respect with the ~~Interim~~Final Junior DIP Order or the Final Junior DIP Order, as applicable;

  f. the entry by a court of competent jurisdiction of an order materially amending, modifying, staying, revoking or reversing the ~~Interim~~Final Junior DIP Order, the Final Junior DIP Order, or the Bid Procedures Order, as applicable, without the express written consent of the Junior DIP Lender;

  g. conversion of any of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code;

  h. dismissal of any of the Chapter 11 Cases;

  i. the appointment of a Chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of any Loan Party (powers beyond those set forth in sections 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code) under sections 1104(d) and 1106(b) of the Bankruptcy Code;

  j. the entry of an order granting relief from the automatic stay under section 362 of the Bankruptcy Code to a holder or holders of any security interest or lien on any part of the Junior DIP Collateral securing the Junior DIP Loans to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any such Junior DIP Collateral having a fair market value in excess of an amount to be agreed by the Junior DIP Lender;

  k. the occurrence of any event of default (or similar event) under the Senior DIP Loan Documents.

12. *Rights and Remedies Upon Event of Default.* Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of Bankruptcy Code

section 362, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this ~~Interim~~Final Junior DIP Order and the Carve Out, the Junior DIP Lender may declare (such declaration, a "**Termination Declaration**") (i) all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (ii) the termination, reduction, or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the Junior DIP Facility, (iii) termination of the Junior DIP Facility as to any future liability or obligation of the Junior DIP Lender, but without affecting any of the Junior DIP Liens or the Junior DIP Obligations and (iv) that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice to the Debtors. After five (5) Business Days from the date the Junior DIP Lender delivers a Termination Declaration in accordance with the foregoing sentence (the "**Remedies Notice Period**"), the Junior DIP Lender shall be entitled to exercise its rights and remedies pursuant to and in accordance with this ~~Interim~~Final Junior DIP Order to satisfy the Junior DIP Obligations and the Junior DIP Liens, subject to the Carve Out. During the Remedies Notice Period, the Debtors, the Official Committee of Unsecured Creditors (the "<u>Committee</u>"), and/or any party in interest shall be entitled to seek an emergency hearing with the Court and the Junior DIP Lender shall not oppose the scheduling of such an emergency hearing. Upon expiration of the Remedies Notice Period, the Junior DIP Lender shall be permitted to exercise all remedies set forth herein, in the Junior DIP Loan Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this ~~Interim~~Final Junior DIP Order.

13. Notwithstanding the foregoing, the Junior DIP Lender may only enter upon a leased premises of the Debtors following an Event of Default in accordance with (i) a separate written agreement among the Junior DIP Lender and the applicable landlord for the leased premises, (ii)

pre-existing rights of the Junior DIP Lender under applicable non-bankruptcy law, (iii) written consent of the applicable landlord for the leased premises, or (iv) entry of an order by this Court approving such access to the leased premises after notice to and an opportunity to be heard for the applicable landlord for the leased premises.

14. *Good Faith Under Section 364(e)*. The Junior DIP Lender has acted in good faith in connection with the DIP Loan Documents, including this ~~Interim~~Final Junior DIP Order, and is entitled to rely upon the protections granted herein and by Section 364(e) of the Bankruptcy Code solely with respect to the Junior DIP Facility.

15. *No Waiver by Failure to Seek Relief*. The failure or delay of the Junior DIP Lender to seek relief or otherwise exercise their respective rights and remedies under this ~~Interim~~Final Junior DIP Order or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Junior DIP Lender.

16. *No Third-Party Rights*. Except as explicitly provided for herein, this ~~Interim~~Final Junior DIP Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

17. *Chubb Reservation of Rights*. For the avoidance of doubt, nothing, including the the ~~Interim~~Final Junior DIP Order and/or the Final Junioir DIP Order, alters or modifies the terms and conditions of any insurance policies issued by ACE American Insurance Company and/or any of its U.S.-based affiliated insurance companies and/or any agreements related thereto.

18. *PACA Reservation of Rights*. Notwithstanding any other recital, finding or provision of this ~~Interim~~Final Junior DIP Order, nothing contained herein or in the Final Junior DIP Order shall be construed to prime, diminish or impair the rights of parties holding valid claims under the statutory trust created pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C.

§ 499a, *et seq*. ("PACA Trust Claims").  If any of the Debtors use any assets impressed with the PACA trust (each, a "PACA Trust Asset") on or after the Petition Date for any purpose other than to pay PACA Trust Claims, the PACA Trust Claims in those PACA Trust Assets shall attach to the applicable Debtors' post-petition assets to the same extent to which such Debtors used PACA Trust Assets and with the same validity as existed as of the Petition Date.

19. *Immediate Enforceability*.  This ~~Interim~~Final Junior DIP Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this ~~Interim~~Final Junior DIP Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this ~~Interim~~Final Junior DIP Order.  Good cause has been shown for immediate entry of this ~~Interim~~Final Junior DIP Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2.

20. *Conflict Between DIP Orders*.  To the extent of any conflict between this ~~Interim~~Final Junior DIP Order and the ~~Interim~~Final Senior DIP Order, the ~~Interim~~Final Senior DIP Order controls

21. *Retention of Jurisdiction*.  The Court shall retain jurisdiction to enforce this ~~Interim~~Final Senior DIP Order according to its terms to the fullest extent permitted by applicable law.

22. *Final Hearing*.  The Final Hearing to consider entry of the ~~Interim~~Final Junior DIP Order is scheduled for April 26, 2023 at 10:00 a.m. (ET) before the Honorable Karen B. Owens,

18

United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom 3, Wilmington, Delaware 19801.

23. *Notice of Final Hearing.* Within three (3) Business Days of the date of the entry of this ~~Interim~~Final Junior DIP Order, the Debtors shall serve via email, overnight courier, hand delivery, United States mail, first-class postage prepaid, or through the Electronic Case Filing system, upon: (a) the Debtors, Attn: Jay Pandya (jaypandya@rohangroup.net); (b) the Debtors' proposed counsel, Mette H. Kurth (MKurth@cm.law) and Lynnette R. Warman (LWarman@cm.law); (c) SSCP, the Debtor's prepetition lender, Ken Schwab (kschwab@sscpmanagement.com); (d) counsel to SSCP, Foley & Lardner LLP, 2021 McKinney Avenue, Suite 1600, Dallas, TX. 75201, Attn: Holland N. O'Neil (honeil@foley.com), Mark C. Moore (mmoore@foley.com), and Timothy Mohan (tmohan@foley.com) and Ashby & Geddes, P.A, 500 Delaware Avenue, 8th Floor, P.O. Box 1150, Wilmington, DE. 19899, Attn: Ricardo Palacio (RPalacio@ashbygeddes.com); (e) Counsel for the Committee, Tucker Ellis LLP, 233 S. Wacker Dr., Suite 6950, Chicago, IL 60606-9997, Attn: Jason M. Torf (jason.torf@tuckerellis.com) and Thomas R. Fawkes (thomas.fawkes@tuckerellis.com), and Potter Anderson & Corroon, LLP, 1313 N. Market St., 6th Floor, P.O. Box 951, Wilmington, DE 19801, Attn: Christopher Samis (csamis@potteranderson.com); (f) the Office of the United States Trustee for the District of Delaware, Attn: Linda Casey (Linda.Casey@usdoj.gov); (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; (i) the office of the attorneys general for the states in which the Debtors operate; and (j) financial institutions where the Debtors hold bank accounts and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**24.** *Objection Deadline*. Objections, if any, to the relief sought in the Motion and entry of the ~~Interim~~Final Junior DIP Order shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the Clerk of the Court, and served via email, overnight courier, hand delivery, United States mail, first-class postage prepaid, or through the Electronic Case Filing system upon: (a) the Debtors, Attn: Jay Pandya (jaypandya@rohangroup.net); (b) the Debtors' proposed counsel, Mette H. Kurth (MKurth@cm.law) and Lynnette R. Warman (LWarman@cm.law); (c) SSCP, the Debtor's prepetition lender, Ken Schwab (kschwab@sscpmanagement.com); (d) counsel to SSCP, Foley & Lardner LLP, 2021 McKinney Avenue, Suite 1600, Dallas, TX. 75201, Attn: Holland N. O'Neil (honeil@foley.com), Mark C. Moore (mmoore@foley.com), and Timothy Mohan (tmohan@foley.com) and Ashby & Geddes, P.A, 500 Delaware Avenue, 8th Floor, P.O. Box 1150, Wilmington, DE. 19899, Attn: Ricardo Palacio (RPalacio@ashbygeddes.com); (e) Counsel for the Committee, Tucker Ellis LLP, 233 S. Wacker Dr., Suite 6950, Chicago, IL 60606-9997, Attn: Jason M. Torf (jason.torf@tuckerellis.com) and Thomas R. Fawkes (thomas.fawkes@tuckerellis.com), and Potter Anderson & Corroon, LLP, 1313 N. Market St., 6th Floor, P.O. Box 951, Wilmington, DE 19801, Attn: Christopher Samis (csamis@potteranderson.com); and (f) the Office of the United States Trustee for the District of Delaware, Attn: Linda Casey (Linda.Casey@usdoj.gov); so that such objections are filed with the Court and received by said parties **on or before 4:00 p.m. (ET) on April 19, 2023**.