# **Exhibit B**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **CBC RESTAURANT CORP**., *et al*.,[1] | Case No. 23-10245 (KBO) |
| Debtors. | (Jointly Administered) |
| | Related D.I. ——289 |

## ORDER AUTHORIZING CBC RESTAURANT CORP. AND ITS AFFILIATED DEBTORS TO (I) SELL SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ~~PERMITTED LIENS,~~ AND INTERESTS, (II) AUTHORIZING AND APPROVING THE DEBTORS' PERFORMANCE UNDER THE APA, (III) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE DEBTORS' EXECUTORY CONTRACTS, UNEXPIRED LEASES, <u>AND PERMITS RELATED THERETO,</u> <u>AND (IV) GRANTING RELATED RELIEF</u>

Upon the motion dated April 7, 2023, [Docket No. 289] (the "**Motion**")[2] of the above-captioned debtor affiliates, as debtors and debtors-in-possession (collectively, the "**Debtors**") for, among other things, the entry of an order pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Bankruptcy Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Local Rules**"), (i) authorizing the Sale of the Purchased Assets free and clear of liens, claims, encumbrances, and other interests, except as provided <u>in this Order and</u> by that <u>certain</u> Asset

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include CBC Restaurant Corp. (0801), Corner Bakery Holding Company (3981), and CBC Cardco, Inc. (1938).  The Debtors' service address is 121 Friends Lane, Suite 301, Newtown PA 18940.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in either the Motion, the Bid Procedures Order (as defined herein), or the APA (as defined herein), as applicable.

Purchase Agreement attached hereto as <u>Exhibit A</u>, as the same may be further amended, supplemented or otherwise modified in accordance with its terms, together with all exhibits and schedules thereto, the "**APA**"), by and between the Debtors and SSCP Restaurant Investors, LLC, a Delaware limited liability company (the "**Buyer**"), (ii) authorizing the Debtors' performance under the APA, (iii) approving the assumption and assignment to the Buyer ~~subject to Sections 2.6, 2.7, and 2.12 of the APA,~~ of certain of the Debtors' executory contracts and unexpired leases, including (but not limited to) certain Contracts, Leases, Insurance Policies, and Permits (each a "**Transferred Contract,**" and collectively, the "**Transferred Contracts**"), ~~and~~ (iv) approving the Contract Review Period procedures set forth herein (the "**Designation Rights**") with respect to the assumption and assignment to Buyer or to an Affiliate of Buyer designated by Buyer of post-Closing Contracts and Leases (the "**Potential Contracts**") in accordance with this Order;[3] and (v) granting related relief, all as more fully set forth in the Motion; the Court having entered an order approving the Bid Procedures and granting certain related relief on April 20, 2023 [Docket No. 361] (the "**Bid Procedures Order**") after a hearing on the same (the "**Bid Procedures Hearing**"); an auction (the "**Auction**") having been held in accordance with the Bid Procedures Order from May 30, 2023 through May 31, 2023; the Buyer having been chosen as the Successful Bidder for the Purchased Assets; the Debtors having filed a *Notice of Sale, Bidding Procedures, Auction, and Sale Hearing* [Docket No. 375] (the "**Auction and Sale Notice**"), a *Notice of Possible Assumption and Assignment with Respect to Executory Contracts and Unexpired Leases of the Debtors* [Docket No. 418] (the "**Cure Notice**"); the Court having conducted ~~a hearing~~hearings on the

---

[3]   For the avoidance of doubt, the effective date of any such Assumption and Assignment of the Transferred Contracts identified as of the Closing Date pursuant to Section 2.6 of the APA, shall be as of the Closing Date, and for Potential Contracts identified as of the Closing Date pursuant to Section 2.12 of the APA and subject to the Designation Rights herein, shall be as of the the applicable Assignment Date (defined below, each the applicable "**Assumption Effective Date**").

{01911381;v3 }

2

Motion on June 1, 2023 (and June 6, 2023 (together, the "Sale ~~Hearing~~Hearings") at which Sale ~~Hearing~~Hearings the Court considered all objections thereto (other than the objections raised by certain of the Debtors' landlord counterparties (the "**Potential Contract Counterparties**" and each a "**Potential Contract Counterparty**") as filed or raised informally either before or on the record at the Sale Hearings as to the assumption and assignment of certain Leases to the Buyer, including as to the adequate assurance of future performance of the Buyer and to the Cure Notice, collectively, the "**Adequate Assurance and Cure Objections** ~~(as defined below)~~" and each an "**Adequate Assurance and Cure Objection,**" which Adequate Assurance and Cure Objections are being adjourned as more fully set forth in this Order), all arguments of counsel and other evidence adduced, and all parties in interest having been heard, and after due deliberations, the Court finds that: all parties in interest, including creditors and equity holders, have had a reasonable opportunity to (a) object or be heard regarding the relief requested in the Motion, including the transaction contemplated therein and in the APA substantially in the form attached hereto and (b) bid on the Purchased Assets, and that good cause and sound business purpose and justification exists and has been shown to grant the Motion on the terms set forth herein, which is in the best interest of the Debtors, their estates, their creditors, their stakeholders, and other parties in interest; due notice of the Motion, the APA, the Bid Procedures Hearing, Bid Procedures Order, the Sale Hearing, the Sale, the Cure Notice, the Cure Amounts (as defined below), and the Auction having been provided; that the Sale was negotiated and proposed in good faith and the Purchase Price is fair and reasonable and in the best interest of the Debtors' estates; the Court having jurisdiction over this matter; the legal and factual bases set forth in the Motion and at the Sale Hearing establishing just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FURTHER FINDS AND DETERMINES THAT:**[34]

## I.    Jurisdiction, Final Order, and Statutory Predicates

A.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    This order (this "**Order**") constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, expressly waives any stay, and expressly directs immediate entry of judgment as set forth herein.

C.    The statutory predicates for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014. The consummation of the Sale and other transactions contemplated by the APA and this Order are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and the Debtors and the Buyer have complied with all the applicable requirements of such sections and rules in respect of such transactions.

D.    The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

---

[34]    All findings of fact and conclusions of law announced by the Court at the Sale ~~Hearing~~Hearings in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

{01911381;v3 }

4881-4034-5447.8

## II.  Notice of the Sale, Auction, and the Cure Amounts

E.    As evidenced by the affidavits and/or certificates of service and publication notice filed with the Court, proper, timely, good, complete, adequate, and sufficient notice of the Bid Procedures, the Auction, the Sale (and all transactions contemplated in connection therewith), the assumption and assignment of the Transferred Contracts specified as of the ~~date hereof~~Closing Date to the Buyer pursuant to the APA, the amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all defaults and pay all actual pecuniary losses under ~~the Transferred Contracts as set forth in the APA~~each such Contract or Lease to be potentially assumed to the Buyer as reflected in the Cure Notice (the "**Cure Amounts**"), the Sale Hearing, and all deadlines related thereto, and a reasonably calculated, fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, have been timely and properly provided, as relevant, in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and Bankruptcy Local Rules 2002-1, and in compliance with the Motion and the Bid Procedures Order, to parties in interest who have formally appeared and requested notice, including, without limitation, the Notice Parties. The Auction and Sale Notice was served on all parties required to receive such notice under the Bid Procedures Order and applicable rules and in accordance with the Bid Procedures Order and was sufficient and proper notice to any other interested parties, including those parties whose identities are unknown to the Debtors. With respect to any parties that may have Claims (as defined below) against the Debtors, but whose identities are not reasonably ascertainable by the Debtors, the publication of the Auction and Sale Notice was sufficient and reasonably calculated under the circumstances to reach such parties.

F.    The Debtors served the Cure ~~Notices~~Notice on each of the non-Debtor counterparties (each, a "**Contract Counterparty**" and, collectively, the "**Contract**

**Counterparties**") to the ~~Transferred~~ Contracts ~~noticing~~and Leases providing notice to such parties: (i) that the Debtors may seek to assume and assign the ~~Transferred~~ Contracts and Leases on the Closing Date or such later date as contemplated by the terms of the APA and (ii) of the relevant Cure Amounts. The service of the Cure ~~Notices~~Notice was good, sufficient, and appropriate under the circumstances, in full compliance with the Bid Procedures Order, provided each Contract Counterparty with timely and proper notice of, and a reasonable opportunity to object and be heard with respect to the Debtors' assumption and assignment to the Buyer of the applicable Transferred Contracts on the Closing Date or the Cure Amounts and no other or further notice is required. ~~All~~ except as set forth below and subject to the right of Contract Counterparties to Potential Contracts to supplement a previously filed Adequate Assurance and Cure Objection in accordance with the terms of this Order. Subject to the right of Contract Counterparties to Potential Contracts to supplement an Adequate Assurance and Cure Objection or Assignment Objection as set forth below, all Contract Counterparties to the ~~Transferred~~ Contracts and Leases have had an adequate opportunity to object to the assumption and assignment of the ~~Transferred~~ Contracts and Leases and the Cure Amounts.

G.     The Debtors' Auction and Sale Notice provided all interested persons and entities with timely and proper notice of, and a reasonable opportunity to object and be heard with respect to the Sale, the Sale Hearing, and the Auction. As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Bid Procedures, the Auction, the Sale Hearing, and the Sale has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014. The Debtors also have complied with all obligations to provide notice of the Auction, the Sale Hearing, and the Sale required by the Bid Procedures Order. The notices described in this

paragraph were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Bid Procedures, the Motion, the Auction, the Sale Hearing, Sale, and all deadlines related thereto, is required.

H.      After the Auction, the Debtors served the *Notice of Successful Bidder and Back-Up Bidder* [Docket No. 551] (the "**Post-Auction Notice**") to interested persons and entities, including, without limitation, the Sale Notice Parties, and all parties required to receive such notice under the Bid Procedures Order and applicable rules. Service of the Post-Auction Notice was appropriate and reasonably calculated to provide interested parties with timely and proper notice of the conclusion of the Auction and the identities of the Successful Bidders and Backup Bidders, as it applies to the Purchased Assets.

I.      The Sale of the Purchased Assets, except with respect to the Potential Contracts and the Designation Rights established by this Order, to the Buyer pursuant to the Bid Procedures is duly authorized under sections 363(b)(1) and 363(f) of the Bankruptcy Code, Bankruptcy Rule 6004(f), and Bankruptcy Local Rule 2002-1. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors and their professionals, agents, and other representatives engaged in a robust and extensive marketing and sale process and have marketed the Purchased Assets and conducted all aspects of the sale process in good faith and in compliance with the Bid Procedures and the Bid Procedures Order, including in consultation with the Consultation Parties (as defined in the Bid Procedures). The marketing process undertaken by the Debtors and their professionals, agents, and other representatives with respect to the Purchased Assets has been adequate and appropriate and reasonably calculated to maximize value for the benefit of all stakeholders. The Bid Procedures and the Auction were duly noticed, were

substantively and procedurally fair to all parties, and were conducted in a diligent, non-collusive, fair, and good-faith manner. The total consideration provided by the Buyer in the transaction contemplated by the APA was the highest and best bid for the Purchased Assets and, therefore, the Buyer was designated as the Successful Bidder.

## III.   Compliance with the Bid Procedures Order

J.   As demonstrated by the evidence proffered or adduced at the Sale Hearings and the representations of counsel at the Sale Hearings, the Debtors have complied in all material respects with the Bid Procedures Order. The Debtors and their professionals have adequately and appropriately marketed the Purchased Assets in compliance with the Bid Procedures and the Bid Procedures Order, and in accordance with the Debtors' fiduciary duties. Based upon the record of these proceedings, creditors, other parties in interest, and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Purchased Assets.

K.   The Bid Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Purchased Assets. The Debtors conducted the sale process without collusion and in accordance with the Bid Procedures.

L.   The Buyer is the Successful Bidder, and the APA is the Successful Bid, for the Purchased Assets in accordance with the Bid Procedures Order. The Buyer has complied in all respects with the Bid Procedures Order and all other applicable orders of this Court in negotiating and entering into the APA and the Sale Transaction, and the APA likewise complies with the Bid Procedures Order and all other applicable orders of this Court.

## IV.   ~~III.~~ Good Faith of the Buyer and Debtors

M.   ~~J.~~ The Buyer is purchasing the Purchased Assets, including all the properties, rights, interests and other tangible and intangible assets of the Debtors acquired by the Debtors before the

Closing as set forth in the APA, including, to the extent provided in the APA, certain claims, causes of action and other legal rights and remedies of the Debtors, and any proceeds of, or property and interests recovered in respect of, and the right to control, all claims and causes of action of any Debtor, whether or not known as of the Closing Date, related to (i) the Purchased Assets, (ii) the Assumed Liabilities, and (iii) the Purchased Avoidance Actions.

N. ~~K.~~ The APA was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's length bargaining positions. Neither the Debtors, nor the Buyer, nor any affiliate of the Buyer has engaged in any conduct that would cause or permit the APA or the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code or under any other law of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. The Buyer is making such purchase in good faith and is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. Neither the Buyer nor any of its affiliates, members, officers, directors, shareholders or any of its or their respective successors or assigns is an "insider" or "affiliate" of any of the Debtors, as those terms are defined in sections 101(31) and 101(2) of the Bankruptcy Code, and the Buyer's professionals, agents, and other representatives have complied in all respects with the Bid Procedures Order and all other applicable orders of this Court in negotiating and entering into the APA and conducting substantial marketing efforts and a competitive sale process. The APA complies with the Bid Procedures Order and all other applicable orders of this Court.

**V. ~~IV.~~ Highest and Best Offer**

O. ~~L.~~ The offer of the Buyer on the terms and conditions set forth in the APA, including the total consideration to be realized by the Debtors thereunder, is: (i) the highest and best offer received by the Debtors after extensive marketing, including through the Bid Procedures, including

by providing the highest economic value available to the Debtors' estates and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, and (ii) in the best interests of the Debtors, their creditors, their stakeholders, their estates and other parties in interest. Taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Purchased Assets for greater economic value to the Debtors or their estates. The Debtors have demonstrated sufficient basis to enter the APA, sell the Purchased Assets on the terms outlined therein, and assume and assign the Transferred Contracts to the Buyer under sections 363 and 365 of the Bankruptcy Code. All such actions are appropriate, valid, reasonable, and sound exercises of the Debtors' business judgment consistent with their fiduciary duties and in the best interests of the Debtors, their creditors, their estates, and other parties in interest. Approval of the Motion and the APA and the consummation of the Sale pursuant to the APA is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

P. ~~M.~~ Good and sufficient reasons for approval of the APA and the transactions to be consummated in connection therewith have been articulated by the Debtors. The Debtors have demonstrated compelling circumstances for the Sale outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code in that, among other things, the immediate consummation of the Sale to the Buyer is necessary and appropriate to preserve and to maximize the value of the Debtors' estates. To maximize the value of the Purchased Assets, it is essential that the consummation of the Sale occur promptly.

## VI. ~~V.~~ No *Sub Rosa* or *De Facto* Plan

Q. ~~N.~~ The Sale of the Purchased Assets outside of a chapter 11 plan pursuant to the APA does not constitute a *sub rosa* or *de facto* plan of reorganization or liquidation as it does not propose to (i) impair or restructure existing debt of, or equity interests in, the Debtors, (ii) impair or circumvent voting rights with respect to any plan that may be proposed by the Debtors,

{01911381;v3 }

10

(iii) circumvent chapter 11 safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code, or (iv) classify claims or equity interests or extend debt maturities. Accordingly, the Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtors.

## VII. ~~VI.~~ Successor Liability

R. ~~O.~~ By virtue of the consummation of the Sale, (i) the Buyer is not a continuation of the Debtors or their respective estates, there is no continuity between the Buyer and the Debtors, there is no common identity of ownership between the Buyer and the Debtors, and there is no continuity of enterprise between the Buyer and the Debtors, (ii) the Buyer is not holding itself out to the public as a continuation of the Debtors or their respective estates, including, but not limited to, as to any warranty or similar obligations, and (iii) the Sale does not amount to a consolidation, merger, or *de facto* consolidation or merger of the Buyer and any of the Debtors or the Debtors' respective estates. By virtue of the consummation of this Sale, the Buyer is not, and shall not be considered, a successor to the Debtors or their respective estates by reason of any theory of law or equity, including, but not limited to, under any federal, state or local statute or common law, or revenue, pension, ERISA, tax, labor, employment, environmental, escheat or unclaimed property laws, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, and the Buyer and its affiliates shall have no liability or obligation under the Workers Adjustment and Retraining Act, 929 U.S.C. §§ 210 et seq. and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans

with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the Fair Labor Standards Act. By virtue of this Sale, the Buyer is not a continuation or substantial continuation of any of the Debtors or their respective estates, business or operations or any enterprise of the Debtors; and the Buyer does not have a common identity of incorporators, directors or equity holders with the Debtors. Accordingly, the Buyer is not and shall not be deemed a successor to the Debtors or their respective estates as a result of the consummation of the Sale pursuant to the APA and this Order.

**VIII.** ~~VII.~~ **No Fraudulent Transfer; Validity of Transfer**

S. ~~P.~~ The APA was not entered into by the Buyer and the Debtors for the purpose of hindering, delaying, or defrauding creditors under either the Bankruptcy Code or the other laws of the United States, or the laws of any state, territory, possession, or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and the Uniform Fraudulent Transfer Act). Neither the Debtors nor the Buyer entered into the APA fraudulently, nor are they entering into or consummating the transactions contemplated by the APA fraudulently, including under applicable federal and state fraudulent conveyance and fraudulent transfer laws. No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than the Buyer and the offer of the Buyer, upon the terms and conditions set forth in the APA, including the total consideration to be realized by the Debtors thereunder constitutes full and adequate consideration, is fair and reasonable and constitutes reasonably equivalent value, fair consideration, and fair value for the Purchased Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the

Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, the laws of the United States, any state, territory, possession, or the District of Columbia, and any other applicable laws. For the purposes of statutory and common law fraudulent conveyance and fraudulent transfer claims, neither the Debtors nor the Buyer are entering into or consummating the transactions contemplated by the APA fraudulently. Approval of the Motion, the APA, the Sale, assumption and assignment of the Transferred Contracts, and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

T. ~~Q. The Debtors are the sole and lawful owners of the Purchased Assets. The Purchased Assets constitute property of the Debtors' estates and title to the Purchased Assets is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.~~ The Debtors (i) have full corporate power and authority to execute the APA, and the Sale to the Buyer has been duly and validly authorized by all necessary corporate action, (ii) have all of the corporate power and authority necessary to consummate the Sale and all transactions contemplated by the APA, (iii) have taken all corporate action necessary to authorize and approve the APA and the consummation by the Debtors of the Sale and all transactions contemplated thereby, and (iv) require no consents or approvals, other than those expressly provided for in the APA, to consummate such transactions.

U. ~~R.~~ Subject to section 363(f) of the Bankruptcy Code, the transfer of each of the Purchased Assets to the Buyer or its designee will be, as of the Closing Date, a legal, valid, and effective transfer of the Purchased Assets, which transfer vests or will vest in the Buyer or such designee with all right, title, and interest of the Debtors in, to, and under the Purchased Assets free and clear of (i) all liens (including any liens as that term is defined in section 101(37) of the

Bankruptcy Code) relating to, accruing, or arising at any time prior to the Closing Date (collectively, as defined in this clause (i) and as set forth in clauses (i)–(ix) of Paragraph T below, the "**Liens**"), other than Permitted Liens, and (ii) all debts arising under, relating to, or in connection with any act of the Debtors, claims (as that term is defined in section 101(5) of the Bankruptcy Code) or causes of action, liabilities, obligations, demands, guaranties, options in favor of third parties, rights, easements, servitudes, restrictive covenants, encroachments, contractual commitments, restrictions, rights of first refusal or interests, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, subleases, licenses, deeds of trust, floating trusts, statutory trusts, including ownership, property or equitable interests, floating equitable interests, equitable title, equitable title, security interests, conditional sale or other title retention agreements, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter-ego, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto (a) that purport to give to any party a right ~~of setoff or recoupment against, or a right~~ or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, interest, including ownership, property or equitable interest, equitable title, purchase or repurchase right or option, or termination of, any of the Debtors' or the Buyer's interests in the Purchased Assets, or any similar rights, or (b) in respect of taxes (including federal, state, and local taxes), restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including without limitation, any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership (collectively, as defined in this clause (ii) and as set forth in clauses

(i)–(ix) of Paragraph T below, the "**Claims**"), relating to, accruing or arising at any time prior to entry of this Order, other than Assumed Liabilities as set forth in the APA or this Order.

### IX. ~~VIII.~~ Section 363(f) Is Satisfied

V. ~~S.~~ The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Purchased Assets free and clear of any interests in the Purchased Assets, including any Claims and Liens. The Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to the Buyer and the assumption, assignment, and sale of the Transferred Contracts to the Buyer (or to Buyer and/or one or more designees) were not, except as otherwise provided in the APA and this Order with respect to the Assumed Liabilities and Permitted Liens, free and clear of all Claims and Liens of any kind or nature whatsoever of the Debtors, or if the Buyer would, or in the future could (except and only to the extent expressly provided in the APA or this Order and with respect to the Assumed Liabilities and Permitted Liens), be liable for any of such Claims and Liens, including, but not limited to, Claims and Liens in respect of the following: (i) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, floating trusts, statutory trusts, interests, including ownership, property or equitable interests, floating equitable interests, equitable title, rights of first refusal or charges of any kind or nature, if any, including without limitation any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership; (ii) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (iii) any other employee, worker's compensation, occupational disease, unemployment, or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act,

(c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Notification Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with the Debtors or any of its predecessors; (iv) interests, including ownership, property or equitable interests, equitable title, claims, liens or other encumbrances that might otherwise arise under or pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, et seq. ("**PACA**"); (v) any bulk sales or similar law; (vi) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and state and local tax statutes or ordinances; (vii) any environmental laws, including any Environmental, Health and Safety Requirement(s); (viii) any agreements, acts, or failures to act of the Debtors; and (ix) any theories of successor or transferee liability.

W. ~~T.~~ The Debtors may sell the Purchased Assets free and clear of all Claims and Liens against the Debtors, their respective estates, or any of the Purchased Assets, including, but not limited to, any Claims and Liens arising under or pursuant to PACA (except for any Assumed Liabilities, including Buyer's assumption of Liabilities related to PACA Claims (as defined below) and Permitted Liens, in each case as and to the extent set forth in the APA and this Order) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Holders of such Claims or Liens fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected, and adequate provision has been made for the payment of such Claims and Liens, including as set forth herein, by having

{01911381;v3 }

4881-4034-5447.8

their Claims or Liens paid in accordance with the APA or attach to the net cash proceeds of the Sale, if any, ultimately attributable to the Purchased Assets in which such creditor or interest holder alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor or interest holder had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto. Those holders of Claims or Liens against or in the Debtors, their estates or any of the Purchased Assets who did not object, who withdrew their objection, or whose objection was overruled, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

X. U. A reasonable opportunity to object or be heard with respect to the Bid Procedures, the Auction, the Sale (and all transactions contemplated in connection therewith), the assumption and assignment of the Transferred Contracts specified as of the date hereofClosing Date to the Buyer pursuant to the APA, the Cure Amounts, the Sale Hearing, and all deadlines related thereto has been afforded to interested persons and entities as described above (except as to the Potential Contracts and any adjourned Adequate Assurance and Cure Objection), including, without limitation: (i) counsel to the Official Committee of Unsecured Creditors; (ii) the U.S. Trustee; (iii) counsel to SSCP; (iv) all known creditors of the Debtors (for whom identifying information and addresses are available to the Debtors); (v) the Internal Revenue Service; (vii) all applicable federal, state, and local taxing authorities; (vi) all persons and entities known by the Debtors to have expressed an interest to the Debtors in the AcquiredPurchased Assets during the 6 months prior to entry of the BiddingBid Procedures Order; (vii) all persons and entities known by the Debtors to have asserted any lien, claim, interest or encumbrance in the AcquiredPurchased Assets (for whom identifying information and addresses are available to the Debtors); (viii) Counterparties to Potential Assumed Contracts, and their counsel, if known; (ix) any governmental

authority known to have a claim against the Debtors in the chapter 11 cases; (x) the United States Securities and Exchange Commission; (xi) the United States Attorney's Office for the District of Delaware; (xii) United States Attorney General's Office for the District of Delaware; (xiii) the Office of the Attorney General and the Secretary of State in each state in which the Debtors operate; (xiv) all of the parties entitled to notice pursuant to Bankruptcy Rule 2002; and (xv) all other parties as directed by the Court; and (xvi) entities whose identities were not reasonably ascertainable by the Debtors and received publication notice that was made in the *New York Times National Edition* and through publication of notice on the website maintained by the Debtors' notice and claims agent at https://kccllc.net/cornerbakery.

## X. ~~IX.~~ Assumption and Assignment of the Transferred Contracts

Y. For the avoidance of doubt, and notwithstanding anything to the contrary in this Order or the APA, no Contracts or Leases subject to Adequate Assurance and Cure Objections are being assumed or assigned under this Order and do not constitute Transferred Contracts under this Order or the APA, and all rights of all Potential Contract Counterparties to Potential Contracts subject to an Adequate Assurance and Cure Objection under Section 365 of the Bankruptcy Code as they relate to the assumption and assignment of any such Potential Contracts (including pursuant to the Designation Rights) are reserved and any dispute with respect thereto (including but not limited to any objections to the assumption and assignment of a Potential Contract, including as set forth in any Adequate Assurance and Cure Objection, to (a) the terms and conditions of the proposed assumption and assignment, (b) adequate assurance of future performance and (c) the proposed Cure Amount and/or payment of all amounts due and owing and performance of all other obligations under such Potential Contracts, any such objection or dispute, an "**Assignment Objection**") shall be resolved pursuant to further order of this Court. No finding of fact or conclusion of law set forth in this Order concerning the assumption and assignment of any

Transferred Contracts shall apply, be binding upon, be law of the case, or operate to collaterally estop any argument in connection with the resolution of an Assignment Objection.

Z. ~~V.~~ The Debtors have demonstrated (i) that it is an exercise of their sound business judgment to assume and assign the Transferred Contracts to the Buyer in each case in connection with the consummation of the Sale and (ii) that the assumption and assignment of the Transferred Contracts to the Buyer is in the best interests of the Debtors, their estates, creditors, interest holders, and other parties in interest. The Transferred Contracts being assigned to the Buyer are an integral part of the Purchased Assets being purchased by the Buyer and, accordingly, such assumption, assignment, and cure of any defaults under the Transferred Contracts are reasonable and enhance the value of the Debtors' estates. Any Contract Counterparty that has not ~~actually filed with the Court an objection to such assumption and assignment~~raised an Adequate Assurance and Cure Objection in accordance with the terms of the Bid Procedures Order and this Order is deemed to have consented to such assumption and assignment.

AA. ~~W. Pursuant~~Subject to the resolution of any adjourned Adequate Assurance and Cure Objection, pursuant to the terms of the APA and this Order, the Buyer (solely to the extent of an Assumed Liability, including Cure Amounts as and to the extent set forth in the APA and this Order) or the Debtors shall have: (i) either or both cured and provided adequate assurance of cure of any defaults under any of the Transferred Contracts within the meaning of section 365(b)(1)(A) of the Bankruptcy Code existing before the ~~effective date of such assumption and assignment to the Buyer (the "~~Assumption Effective Date~~")~~ and (ii) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the ~~applicable~~ Assumption Effective Date under any of the Transferred Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. After the payment

of the relevant Cure Amounts as required by the APA and this Order, the Debtors shall not have any further liabilities to the Contract Counterparties to the Transferred Contracts for the period on or prior to the ~~applicable~~ Assumption Effective Date. The Buyer provided adequate assurance of its future performance under the relevant Transferred Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code. Any Contract Counterparty who did not timely file an objection to the assumption of its ~~Transferred~~ Contract or Lease shall be deemed to have consented to its assumption and assignment to the Buyer pursuant to section 365 of the Bankruptcy Code in accordance with the APA.

BB. ~~X.~~ Upon payment of the Cure Amounts, no default shall exist in the Debtors' performance under the Transferred Contracts as of the ~~applicable~~ Assumption Effective Date other than defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

## XI. ~~X.~~ Compelling Circumstances for an Immediate Sale

CC. ~~Y.~~ Good and sufficient reasons for approval of the APA and the Sale have been articulated. The relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. To maximize the value of the Debtors' assets and preserve the viability of the business as a going concern to which the Purchased Assets relate, it is essential that the Sale be approved and occur promptly within the time constraints set forth in the APA. Time is of the essence in effectuating the APA and consummating the Sale, both to preserve and maximize the value of the Debtors' assets for the benefit of the Debtors, their estates, their creditors, interest holders, and all other parties in interest in the Chapter 11 Cases and to provide the means for the Debtors to maximize recoveries. As such, the Debtors and the Buyer intend to close the Sale of the Assets as soon as reasonably practicable. The Debtors have demonstrated both compelling circumstances and a good, sufficient, and sound business purpose and justification

for immediate approval and consummation of the APA. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

**THE COURT FURTHER HEREBY FINDS AND DETERMINES, ORDERS, ADJUDGES, AND DECREES THAT:**

<u>**General Provisions**</u>

1.      The findings and conclusions set forth in this Order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this matter by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing shall be deemed additional findings of fact and conclusions of law in this matter and are incorporated herein. When appropriate, all findings of fact shall be construed as conclusions of law, and all conclusions of law shall be construed as findings of fact.

2.      Pursuant to all applicable statutory and procedural predicates, including, without limitation, §§105(a), 363(b), 363(f) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014, the relief requested in the Motion is granted to the extent set forth herein and the transactions contemplated thereby and by the APA are approved for the reasons set forth in this Order and on the record of the Sale Hearing, which is incorporated fully herein as if fully set forth in this Order, and the Sale contemplated by the APA is approved.

3.      Other than the <u>Adequate Assurance and </u>Cure Objections<u> or any Assignment Objection for a Potential Contract subject to Section 2.12 of the APA, as applicable</u>, all objections, statements, and reservations of rights to the Motion and the relief requested therein and to the entry of this Order or the relief granted herein that have not been expressly withdrawn, waived, adjourned, settled as announced to the Court at any prior hearing, at the Sale Hearing, or by stipulation filed with the Court, or previously overruled, including, without limitation, all

{01911381;v3 }

4881-4034-5447.8

reservations of rights included therein or otherwise, are hereby overruled and denied in their entirety on the merits and with prejudice, except as expressly set forth herein. Those parties who did not object, or withdrew their objections to the Motion, are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code; provided, however, ~~objections (whether formal or informal) challenging the adequacy of the Cure Amounts necessary for the Debtors to assume and assign a particular Transferred Contract (the "**Cure Objections**") or challenging adequate assurance of future performance with respect to the assumption or assignment of a particular Transferred Contract (the "**Adequate Assurance**~~subject to a right to supplement a Cure Amount pursuant to the Designation Rights set forth herein, Adequate Assurance and Cure Objections, or Assignment Objections")~~, as applicable shall be set for hearing on [~~**July 6, 2023, at 9:30 a.m. prevailing Eastern Time**] (the "**Cure** or such later hearing set at such time a Potential Contract is designated for assumption and assignment to the Buyer pursuant to the Designation Rights set forth in this Order (the "**Assignment** Objection Hearing"), and all parties reserve their rights as to the Adequate Assurance and Cure Objections or Assignment Objections, as applicable, and final determination of the applicable Cure Amount owed with ~~to the Cure Objections~~respect thereto.

4. In the event any Adequate Assurance and Cure Objections, or Assignment Objections, as applicable, are resolved by agreement of the parties prior to the Cure Objection Hearing, the parties shall be authorized to file an agreed order under certification of counsel reflecting the resolution of such objections. Upon the entry of such agreed order resolving such Adequate Assurance and Cure Objection, or Assignment Objection, as applicable, the Contract or Lease at issue shall be deemed to be a Transferred Contract under this Order.

5.   ~~4.~~ This Court's findings of fact and conclusions of law set forth in the Bid Procedures Order are incorporated herein by reference. In the event of any inconsistency between this Order and any other Order previously entered by this Court, this Order governs.

**Approval of the APA and Transition Services Agreement**

6.   ~~5.~~ The APA and all other ancillary documents related thereto or contemplated thereby, including the Transition Services Agreement (the "**TSA**") attached hereto as **Exhibit B** (collectively, the "**Sale Documents**"), and all of the respective terms and conditions thereof, including the Sale contemplated hereby and thereby, and the Purchase Price therefor are hereby approved. The Debtors are authorized and directed to enter into the APA and the other Sale Documents to be executed in connection with the APA as may be necessary to consummate the Sale and to perform their obligations thereunder.

7.   ~~6.~~ Pursuant to sections 363 and 365 of the Bankruptcy Code, entry by the Debtors into the APA is hereby authorized and approved. The Debtors and the Buyer acting by and through their existing agents, representatives, and officers are authorized, empowered and directed, without further order of this Court, to use their reasonable best efforts to take any and all actions necessary or appropriate to (a) consummate and close the Sale in accordance with the terms and conditions of the APA and this Order, (b) transfer and assign all rights, title, and interest to all assets, property, licenses, and rights of the Debtors to be conveyed in accordance with the terms and conditions of the APA and this Order, and (c) execute and deliver, perform under, consummate, implement, and close fully the APA, including the assumption and assignment to the Buyer of the Transferred Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, including any other Sale Documents, or as may be reasonably necessary or appropriate to the performance of the obligations as

contemplated by the APA, this Order, and such other Sale Documents, including any actions that otherwise would require further approval by shareholders, members, or their boards of directors, as the case may be, without the need to obtain such approvals. The Debtors are hereby authorized to perform their covenants and undertakings as provided in the APA and any Sale Documents before or after the Closing Date without further order of the Court. Neither the Buyer nor the Debtors shall have any obligation to proceed with the Closing under the APA until all conditions precedent to their obligations to do so have been met, satisfied, or waived, ~~including the approval of the Canadian Sale,~~ except as otherwise contemplated and provided for in the APA and this Order.

8. ~~7.~~ This Order ~~and the APA~~, including, without limitation, the provisions approving the APA and the transactions contemplated therein, shall be binding in all respects upon the Debtors, the Debtors' estates, all holders of equity interests in any Debtor, all holders of Claims or Liens (whether known or unknown) against any Debtor, any holders of Claims against or Liens on all or any portion of the Purchased Assets, all Contract Counterparties~~,~~ (except as such forth herein with respect to Adequate Assurance and Cure Objections or Assignment Objections, as applicable), the Buyer and all successors and assigns of the Buyer, the Purchased Assets, all successors and assigns of the Debtors, and any subsequent trustees appointed in any of the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases, and shall not be subject to rejection or unwinding. This Order and the APA shall inure to the benefit of the Debtors, their estates, their stakeholders, their creditors, the Buyer and their respective successors and assigns. Nothing in any chapter 11 plan confirmed in the Chapter 11 Cases, the confirmation order confirming any such chapter 11 plan, any order approving the wind down or dismissal of the Chapter 11 Cases, or any order entered upon the conversion of the Chapter

11 Cases to one or more cases under chapter 7 of the Bankruptcy Code or otherwise shall alter, conflict with, or derogate from, the provisions of the APA or this Order.

## **Transfer of the Purchased Assets**

9. ~~8.~~ Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Purchased Assets to the Buyer (and/or one or more designees of Buyer) on the Closing Date. The transfer of the Purchased Assets to the Buyer or any such designee under the APA does not require any consents other than as specifically provided for in the APA. The transfer of the Debtors' rights, title, and interest in the Purchased Assets to the Buyer and/or any designee of Buyer pursuant to the APA and this Order shall be deemed transferred to the Buyer and/or such designee, if any, upon and as of the Closing Date, and such transfer of the Purchased Assets and the consummation of the Sale and any related actions contemplated thereby constitute a legal, valid, binding, and effective transfer of the Debtors' right, title, and interest in the Purchased Assets and shall vest the Buyer and/or one or more of its designees with all the rights, title and interest of the Debtors in and to the Purchased Assets free and clear of all Claims and Liens (except Assumed Liabilities and Permitted Liens). Upon the Closing, the Buyer or its designee or designees, if any, shall take title to and possession of the Purchased Assets subject only to the Assumed Liabilities and Permitted Liens and the terms of this Order. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets and the assumption and assignment of the Transferred Contracts shall be free and clear of all Claims and Liens including, without limitation, all Claims pursuant to any successor or successor-in-interest liability theory and any valid Claims and Liens arising under or pursuant to PACA (the "**PACA Claims**"), except for Assumed Liabilities and Permitted Liens~~.~~ and the terms of this Order.  For the avoidance of doubt, and notwithstanding anything to the contrary in this Order or the APA, no Potential Contracts shall be part of the Purchased Assets under this Order or

{01911381;v3 }

25

the APA until such time as they have been designated for assumption and assignment to the Buyer pursuant to the Designation Rights and become Transferred Contracts

10. ~~9.~~ The sale of the causes of action pursuant to the APA is hereby approved. Standing to file, prosecute, settle any and all claims or causes of action that are Purchased Assets shall be irrevocably vested in the Buyer to the fullest extent permitted by applicable law and as set forth in the APA.

11. ~~10.~~ On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Debtors' rights, title, and interest in the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Buyer and/or, at Buyer's request, one or more designees of Buyer on the Closing Date pursuant to the terms of the APA and this Order, free and clear of all Claims and Liens (other than Assumed Liabilities and Permitted Liens). Notwithstanding the foregoing, if the Buyer requests, then the Debtors shall deliver, or cause to be delivered, to the Buyer: (a) executed bills of sale and such other instruments of transfer conveying the Purchased Assets ~~to the Buyer~~, in form and content reasonably satisfactory to the Buyer; (b) an executed assignment assigning all of the Debtors' rights and obligations under the Transferred Contracts or any ~~Designated~~Potential Contracts ~~(as defined below)~~, in form and content reasonably satisfactory to the Buyer; and (iii) such other documents and certificates as the Buyer may reasonably request to transfer the Purchased Assets. For the avoidance of doubt, the Excluded Assets set forth in the APA are not included in the Purchased Assets, and the Excluded Liabilities set forth in the APA and herein are not Assumed Liabilities.

12. ~~11.~~ As of the Closing Date, to the fullest extent permitted by law, the Buyer is authorized to operate under any license, permit, insurance policy, registration, and governmental

authorization or approval of the Debtors constituting Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date as provided by the APA to the fullest extent permitted by law. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale.

13.     12. Except with respect to Assumed Liabilities and Permitted Liens, all persons and entities holding Claims against the Debtors or Claims against or Liens on any portion of the Purchased Assets, are hereby forever barred, and estopped, and permanently enjoined from asserting against the Buyer or its successors or assigns (including without limitation its designees), their property, or the Purchased Assets such persons' or entities' Claims against the Debtors or Claims or Liens in and to the Purchased Assets. On and after the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may reasonably be deemed by the Buyer to be necessary or desirable to evidence the release of Claims or Liens, if any, as provided for herein and in the APA, as such Claim or Lien may have been recorded or may otherwise exist; provided, however, any failure to do so shall not in any way effect the validity of any free and clear transfer pursuant to this Order.

14.     13. All persons and entities that are presently, or as of the Closing Date may be, in possession of some or all of the Purchased Assets (wherever located) to be sold, transferred, or conveyed to the Buyer or its designee pursuant to the APA are hereby directed to surrender possession of such Purchased Assets to the Buyer or such designee on or as soon as practicable

after the Closing Date. To the extent that any such person or entity fails or refuses to surrender possession of such Purchased Assets on or after the Closing Date, the Buyer has the right to commence a turnover action and ~~have it~~request that it be considered by this Court on an expedited basis.

15. ~~14.~~ This Order is and shall be effective as a determination that, as of the Closing Date, all Claims and Liens of any kind or nature whatsoever on or against the Purchased Assets before the Closing, including, but not limited to, any Claims and Liens arising under or pursuant to PACA, other than Assumed Liabilities (including Buyer's assumption of Liabilities related to PACA Claims and Permitted Liens, in each case as and to the extent set forth in the APA), or as otherwise provided in this Order or the APA, shall ~~have been unconditionally released, discharged, and terminated. Further, this Order is and shall be effective as a determination that, as of the Closing Date, the conveyances described herein have been effected, with all such Claims and Liens, including, but not limited to, any Claims and Liens arising under or pursuant to PACA, (to the extent not paid by the Buyer in accordance with the APA), to~~ attach to any net proceeds received by the Debtors ultimately attributable to the Purchased Assets against, or in, which such Claims or Liens are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Claims or Liens now have against such Purchased Assets, subject to any rights, claims, and defenses that the Debtors or their estates and creditors, as applicable, may possess with respect thereto.

16. ~~15.~~ This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and

entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby authorized ~~and directed~~ to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

17. ~~16.~~ Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA. A copy of this Order may be: (a) filed with the appropriate clerk; (b) recorded with the recorder; or (c) filed or recorded with any other governmental agency to act to cancel any of the Claims, Liens, and other Encumbrances of record.

18. ~~17.~~ If any person or entity that has filed statements or other documents or agreements evidencing Claims or Liens in all or any portion of the Purchased Assets has not delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and Claims and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Claims and Liens (other than Assumed Liabilities or Permitted Liens), which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, then the Buyer and the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents in the name and on behalf of such person or entity with respect to the Purchased Assets; provided that, notwithstanding anything in this Order or the APA to the contrary, the provisions of this Order shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases termination statements,

assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.

## Buyer is a Good Faith Purchaser

19. ~~18.~~ The transactions contemplated by the APA are undertaken by the Debtors and the Buyer at arms' length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code. The Buyer is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (a) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets and did not attempt to limit the Debtors' freedom; (b) the Buyer did not in any way induce or cause the chapter 11 filing of the Debtor; (c) the Buyer made the highest or otherwise best bid for the Purchased Assets, which was subsequently open to higher and better bids; (d) the negotiation and execution of the APA and any other agreements or instruments related thereto were in good faith and at arms' length between the Buyer and the Debtors and there was no evidence of insider influence or improper conduct by the Buyer in connection with the negotiation of the APA with the Debtors, no evidence of fraud, collusion, or bad faith on the part of the Buyer, no evidence of the Buyer doing anything to control or otherwise influence the marketing or sale process, including anything to control or otherwise influence the purchase price paid for the Purchased Assets, and no evidence that the Buyer violated section 363(n) of the Bankruptcy Code; (e) the Buyer's Qualified Bid was subject to a marketing process in a time frame approved by the Court through the Bid Procedures Order; and (f) the Debtors conducted the marketing process in consultation with the Consultation Parties and contacted all potential bidders suggested by such parties. Accordingly, the reversal or modification on appeal of the authorization provided herein

to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Transferred Contracts), unless such authorization and such Sale are duly stayed pending such appeal.

20. ~~19.~~ The Debtors and the Buyer have not engaged in any conduct that would permit the APA or the Sale to be avoided under section 363(n) of the Bankruptcy Code.

**Satisfaction of Section 363(f)**

21. ~~20.~~ The conditions of section 363(f) have been satisfied in full, including, specifically, that the Debtors' principle secured lenders and other known creditors having or asserting Liens on the Purchased Assets have reviewed the Debtors' alternatives and have consented to the Sale or can be compelled to accept a money satisfaction of such interest pursuant to section 363 of the Bankruptcy Code. To the extent the Buyer has not expressly assumed such obligations pursuant to the APA, all Claims and Liens, including, but not limited to, Claims and Liens arising under or pursuant to PACA, and secured Claims of creditors and/or taxing authorities will attach to the proceeds of the sale, if any, in the same validity, priority, and extent that such interests existed on the Petition Date but after giving effect to the Final Senior DIP Order.

22. ~~21.~~ All parties with Liens against the Purchased Assets who did not object to the Motion and the relief requested therein, who did not request adequate protection of any possessory right, or who withdrew their objections to the Motion, are deemed to have consented to the Motion pursuant to section 362(f)(2) of the Bankruptcy Code. All parties with Liens against the Purchased Assets who objected to the Motion, but who did not withdraw any objection, can be compelled to accept a monetary satisfaction of their Liens within the meaning of section 363(f)(5) of the Bankruptcy Code and, in each case, are estopped and barred from taking any action against the Buyer, its affiliates or any agent of the foregoing to recover any claim that such person or entity

has solely against the Debtors or any of its affiliates. Therefore, the transfer of the Purchased Assets to the Buyer under the APA as of the Closing shall be a legal, valid, and effective transfer of the Purchased Assets, and, except as expressly permitted under the express terms of the APA, shall vest the Buyer with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Claims and Liens (other than Assumed Liabilities and Permitted Liens). For the further avoidance of doubt, and without limiting the effect of any of the foregoing, the transfer, assumption and assignment, of any of the Transferred Contracts shall be free and clear of all Liens, other than the contractual commitments being assumed by the Buyer following assignment thereof.

**No Successor Liability**

23. 22. Effective upon the Closing Date or such Potential Contract Assignment Effective Date (defined below), as applicable, all persons and entities, including persons and entities asserting rights under PACA, are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer or its affiliates, successors or assigns (including without limitation any designees) or their respective properties, or the Purchased Assets, with respect to (a) any Claims and Liens (other than Assumed Liabilities and Permitted Liens) against the Debtors or the Purchased Assets, or the operation of the Purchased Assets by the Debtors prior to the Closing or (b) any theory of successor liability arising by virtue of the consummation of the Sale, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer, or its affiliates, successors or assigns or their respective assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Buyer, or its affiliates, successors or assigns or their respective assets or properties; (iii) creating,

perfecting, or enforcing any Claims or Liens against the Buyer, or its affiliates, successors or assigns or their respective assets or properties; (iv) asserting any ~~setoff,~~ right of subrogation~~, or recoupment of any kind~~ against any obligation due to the Buyer, or its affiliates, successors or assigns or their respective assets or properties; (v) commencing an enforcement action under PACA with respect to PACA Claims against the Debtors to obtain an injunction to freeze any assets of the Buyer; (vi) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vii) revoking, terminating, or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets, in each case under the prior clauses (i) through (vii), solely with respect to events or conditions occurring prior to the Closing Date, and excluding Assumed Liabilities, liabilities assumed under Transferred Contracts and Permitted Liens.

## Assumption and Assignment of Contracts

24.     ~~23. The~~Except as to a Potential Contract to be designated for assumption and assignment to the Buyer pursuant to Section 2.12 of the APA and the Designation Rights set forth in this Order, the Debtors are hereby authorized and directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign the Transferred Contracts to the Buyer or its designee free and clear of all Claims, Liens, and other interests of any kind or nature whatsoever (other than the Assumed Liabilities), subject to the terms of the APA and this Order, as of the applicable Assumption Effective Date and (b) execute and deliver to the Buyer such documents or other instruments as the Buyer deems necessary to assign and transfer the Transferred Contracts to the Buyer or its designee in accordance with the APA and this Order. The

payment of the applicable Cure Amounts (if any) as required by the APA and this Order shall (i) effect a cure of all monetary defaults existing thereunder as of the applicable Assumption Effective Date, (ii) compensate for any actual pecuniary loss to the applicable Contract Counterparty resulting from such default, and (iii) together with the assignment by the Debtors to and the assumption of the Transferred Contracts by the Buyer or its designee, constitute adequate assurance of future performance thereof; provided, however, all Adequate Assurance and Cure Objections and Adequate Assurance Objections shall be heard at the CureAssignment Objection Hearing and all parties reserve their rights as to the final determination of the Cure Amounts owed with respect thereto.

24. On the Closing Date, the Debtors shall assume and assign to the Buyer or its designee each Transferred Contract designated by Buyer for assumption and assignment on the Closing Date in accordance with the APA and this Order.

**Contract Review Period Procedures**

25. The following Designation Rights procedures shall apply and are approved in connection with Section 2.12 of the APA, to accomplish the assumption and assignment of any Potential Contract to the Buyer during the Contract Review Period.

26. In accordance with the terms of the APA and this Order, through the earlier of (a) the ninety (90) days following the Closing Date, (b) the effective date of a confirmed plan of reorganization or liquidation for the Debtors, (c) such time that the Chapter 11 Cases are closed or converted to a case under chapter 7, or (d) dismissal of the Chapter 11 Cases (the "**Contract Review Period**"), *provided, however,* with respect to Leases, in no event shall the Contract Review Period extend beyond the earlier of September 20, 2023, and the date of the entry of an order confirming a plan of reorganization or liquidation for the Debtors, absent the consent of a landlord

Contract Counterparty, the Buyer may deliver written notice (each, a "**Designation Notice**") to the Debtors designating any executory contract or unexpired lease, including any Contract, Lease, Insurance Policy, or Permit (each a "**Potential Contract**") not previously assumed and assigned to the Buyer or rejected for either: (a) assumption and assignment to the Buyer or its designee, or (b) rejection. Within two (2) Business Days following the Debtors' receipt of any such Designation Notice, the Debtors shall file a notice on the docket in the above-captioned case ~~and provide notice to~~(each an "**Assumption Notice**" or "**Rejection Notice**," as applicable) and serve such notice via email and/or by overnight delivery upon the counterparty to such ~~Designated~~Potential Contract (each a "**Designation Counterparty**"), and its counsel, if known, of the Debtors' intent to assume and assign or reject such ~~Designated~~Potential Contract~~, which notice shall include, among other things, a.~~ The deadline ~~(the "**Objection Deadline**") of no less than ten (10) Business Days from the date of service of such notice~~ to object to the assumption and assignment ~~of such Designated Contract. Upon the expiration of this~~ or rejection of such Potential Contract pursuant to such Assumption Notice or Rejection Notice, as applicable, (the "**Objection Deadline**~~ no further Court approval shall be required for the assumption and assignment to Buyer of such Designated Contract in accordance with the terms of the APA unless (1) the Designation Counterparty timely serves an objection upon the Debtors and the Buyer~~") shall be at least fourteen (14) calendar days from the date of service.

27.     If such Potential Contract is to be rejected, the following procedures are approved in connection with the rejection of such Potential Contract:

A.     The Debtors shall file and serve a Rejection Notice to reject a Potential Contract pursuant to section 365 of the Bankruptcy Code, which Rejection Notice shall set forth, among other things:

i.     The Potential Contracts to be rejected;

ii.     the Debtor or Debtors party to such Potential Contract;

iii.     the names and addresses of Designation Counterparty(ies) to such Potential Contracts;

iv.     the proposed effective date of rejection for such Potential Contracts, which, for a Lease of leased real estate shall be no earlier than the later of (a) the date the Debtors file and serve such Rejection Notice (b) the proposed effective date of the rejection for such Lease set forth in the Rejection Notice, or (c)(1) if applicable, the date upon which the Debtors in writing (email sufficient) notify the landlord and surrender the premises to the landlord and return or provide access to the keys, key codes, lockbox codes, or security codes, or (2) the date the Debtors in writing (email sufficient) notify the affected landlord that the keys, key codes, lockbox codes, or security codes, if any, are not available but the landlord may rekey the leased premises, as applicable (the "**Rejection Date**");

v.     if any such Potential Contract is a Lease of leased real estate, a general description of the personal property to be abandoned (the "**Abandoned Property**"), if any, which Rejection Notice shall also be served upon any third-party with an interest in such Abandoned Property providing notice that if such Abandoned Property is not removed or an objection is not raised prior in time to the Rejection Date, landlords will have the ability, in their sole discretion and without further notice to any party or order of the Court, to utilize and/or dispose of such Abandoned Property without further notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay will be modified to allow such disposition;

vi.     the deadlines and procedures for filing objections to the Rejection Notice; and

vii.     be accompanied by a form of order authorizing the rejection of the Potential Contract or Contracts (a "**Rejection Order**").

B.     ***No Objection Timely Filed.*** If no objection to the rejection of one or more Potential Contracts listed in a Rejection Notice is timely filed (including to the proposed abandonment of any Abandoned Property at leased premises, if applicable), the Debtors shall submit the Rejection Order to the Court in the form attached to the Rejection Notice rejecting all Potential Contracts with respect to which no objection was timely filed, and each such Potential Contract shall be rejected as of the applicable Rejection

{01911381;v3 }

4881-4034-5447.8

Date set forth in the Rejection Notice or such other date to which the Debtors and the applicable Designation Counterparty agree; *provided* that the Rejection Date for rejection of a lease of non-residential real property shall not occur until the later of (i) the Rejection Date set forth in the Rejection Notice and (ii) the date the Debtors relinquish control of the premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and (A) turning over or providing access to the keys, key codes, lockbox codes, or security codes, if any, to the affected landlord or (B) notifying the affected landlord in writing that the keys, key codes, lockbox codes, or security codes, if any, are not available but the landlord may rekey the leased premises (the "**Surrender Date**").

C.     *Unresolved Timely Objection.* If an objection to the rejection of a Potential Contract listed in a Rejection Notice (including to the proposed abandonment of any Abandoned Property at the leased premises, if applicable) is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall request the Court schedule a hearing on such objection and shall provide at least five (5) days' notice, and no later than thirty (30) days after delivery of the Rejection Notice, of such hearing to the applicable Designation Counterparty, any other party objecting to the proposed rejection (if applicable), and any other affected parties, as applicable.

D.     *Abandoned Property.* Following consultation with the Buyer, the Debtors are authorized, but not directed, at any time on or before the applicable Rejection Date, to remove or abandon any of the Debtors' personal property that may be located on or in the Debtors' leased premises under a rejected Potential Contract. The Debtors shall generally describe the property in the Rejection Notice and their intent to abandon such property. Absent a timely objection, any and all property located on or in the Debtors' leased premises on the Rejection Date of the applicable lease of non-residential real property shall be deemed abandoned pursuant to sections 363 and 554 of the Bankruptcy Code effective as of the Rejection Date. As of the Rejection Date, landlords may, in their sole discretion and without further notice to any party or order of the Court, utilize and/or dispose of such Abandoned Property without further notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition. The rights of the counterparty to each Potential Contract to assert claims for the disposition of the Abandoned Property are reserved, as are all parties' rights to object to such claims.

E.     *Proofs of Claim.* Claims arising out of the rejection of a Contract, if any, must be filed on or before the later of (i) the general bar date established in these bankruptcy cases for the filing of general unsecured claims, and (ii) thirty (30) days after the later of (A) the entry of an order

{01911381;v3 }

4881-4034-5447.8

approving the rejection of such Potential Contract, and (B) the Rejection Date applicable to such Potential Contract.

28.     If such Potential Contract is to be assumed and assigned, the following procedures are approved in connection with the assumption and assignment of such Potential Contract:

A.     The Debtors shall file and serve an Assumption Notice indicating the Debtors' intent to assume or assume and assign a Potential Contract or Contracts pursuant to section 365 of the Bankruptcy Code, which shall set forth, among other things:

i.     the Potential Contract or Contracts to be assumed or assumed and assigned;

ii.     the Debtor or Debtors party to such Potential Contract;

iii.     the names and addresses of the Designation Counterparty(ies) to such Potential Contracts;

iv.     if such Potential Contract is a Lease of leased real estate, the address of the leased premises;

v.     the identity of the proposed assignee of such Potential Contracts (the "Assignee"), if applicable;

vi.     the proposed effective date of the assumption and assignment for each such Potential Contract (the "**Assignment Date**");

vii.     the proposed Cure Amount, *provided, however*, to the extent a Designation Counterparty failed to timely object to the Cure Amount set forth in the Cure Notice, such Designation Counterparty is deemed to have consented to such Cure Amount and waived any other defaults under the Potential Contract(s) arising on or before the Closing Date; *provided, further*, with respect to any Designation Counterparty that filed a timely Adequate Assurance and Cure Objection, such Designation Counterparty may supplement its objection solely to the extent that additional Cure Amounts arose and became due after the date of the Adequate Assurance and Cure Objection, and remain unpaid; provided that all of the Debtors' rights to object to such supplemental Cure Amount are expressly reserved;[5]

---

[5]     Except as set forth above with respect to Cure Amounts, the rights of all Deisgnation Counterparties as they relate to the assumption and assignment of any Potential Contracts are reserved and any disputes with respect

{01911381;v3 }

38

viii. if such Potential Contract is a Lease of leased real estate to be assumed and assigned, be accompanied by evidence of the Assignee's adequate assurance of future performance;

ix. the deadlines and procedures for filing objections to the Assumption Notice; and

x. be accompanied by a form of order authorizing the assumption and assignment of the Potential Contract (an "**Assumption Order**").

B. *No Objection.* If: 1) no Adequate Assurance and Cure Objection was previously filed with respect to the Potential Contract, or 2) no objection to the proposed assumption or assumption and assignment of one or more Potential Contracts listed in an Assumption Notice is timely filed, the Debtors shall submit the Assumption Order to the Court in the form attached to the Assumption Notice assuming and assigning the Potential Contract or Contracts with respect to which no objection was timely filed to the Buyer, and each such Potential Contract shall be assumed or assumed and assigned as of the applicable Assignment Date set forth in the Assumption Notice or such other date as the Debtors, any Assignee, and the applicable Designation Counterparty may agree, and the proposed Cure Amount listed in the Assumption Notice shall be binding on all Designation Counterparties to such Potential Contract, and no amount in excess thereof shall be paid for cure purposes; *provided* that the Assignment Date for Lease of leased real estate shall not occur earlier than the date the Debtors filed and serve an applicable Assumption Notice.

C. *Unresolved Timely Objection.* If an objection to the assumption or assumption and assignment of a Potential Contract listed in an Assumption Notice is timely filed and properly served as specified herein, including with respect to an objection that relates to adequate assurance of future performance or a cure issue that could not have been raised in an objection to ~~any of~~ the Cure ~~Notices~~Notice or with respect to adequate assurance at or prior to the ~~Cure~~Assignment Objection Hearing and pertains to matters arising after the Closing (a "**Subsequent Cure Objection**")~~ and (2)~~, for which the Designation Counterparty, the Debtors, and the Buyer are unable to settle or resolve ~~such Subsequent Cure Objection. To the extent a Designation Counterparty timely files an objection with respect to the rejection of such Designated Contract, the Debtors and the~~ and not withdrawn, the Debtors shall request the Court schedule a hearing on such objection and shall provide at least five (5) days' notice and no later than

thereto shall be resolved pursuant to the Designation Rights set forth in this Order. All rights of Debtors to dispute objections to the assumption and assignment of any Potential Contract are expressly reserved.

{01911381;v3 }

4881-4034-5447.8

thirty (30) days after delivery of the Assumption Notice, of such hearing to the applicable Designation Counterparty and any other affected parties. Notwithstanding the foregoing, the Buyer, as applicable, shall be authorized to settle or resolve such objection with the objecting Designation Counterparty pursuant to the terms of the APA and this Order without further order from this Court. If the Debtors, Buyer, and Designation Counterparty are unable to resolve a Subsequent Cure Objection or an objection with respect to the rejection of a Designated Contract, the Debtors shall schedule the matter for hearing on no less than five (5) Business Days' notice and no later than thirty (30) days after delivery of the Designation Notice. .

29. 25. During Notwithstanding the foregoing, and without the need for the filing of an Assumption Notice, during the Contract Review Period, the Buyer may deliver a written notice to the Debtors of Buyer's and the Designation Counterparty to a Potential Contract shall be authorized to file an agreed order under certification of counsel reflecting the entry into an agreement with a Designation Counterparty as between such parties pursuant to which such Designation Counterparty consents to the assumption and assignment to Buyer or its designee of such Designated Potential Contract on the terms set forth in such agreement (each, an a "**Amended Designated Resolved Potential** Contract"), including the payment of any Cure Amounts. The assumption and assignment of such Amended Designated Resolved Potential Contract shall be effective on the date set forth in the written notice provided to the Debtors Resolved Potential Contract without further order of the Court, unless (a) the counterparty, the Debtors, Designation Counterparty and the Buyer agree otherwise or (b) the Court adjudicates otherwise.

30. 26. Once a Designated Potential Contract or an Amended Designated a Resolved Potential Contract is assumed and assigned to the Buyer or its designee in accordance with the APA, this Order, or any subsequent assumption and assignment order, such Designated Assumption Order, such Potential Contract or Amended Designated Resolved Potential Contract shall be deemed a Transferred Contract as of the applicable Assignment Date.

31. 27. Except as provided herein, the Transferred Contracts shall be transferred to and remain in full force and effect for the Buyer's benefit in accordance with their respective terms, notwithstanding any provision in any such Transferred Contract (including, without limitation, those of the type described in section 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer. Pursuant to section 365(k) of the Bankruptcy Code, following the Assumption Effective Date, and upon payment of the Cure Amount, the Debtors shall be relieved from any further liability with respect to such Transferred Contracts after their assumption and assignment to the Buyer.

32. 28. All monetary defaults of the Debtors under the Transferred Contracts arising or accruing prior to Closing shall be deemed cured and all other requirements of section 365(b) shall be deemed satisfied upon payment of the Cure Amounts, if any.

33. 29. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, other than the right to payment of any Cure Amount, all Contract Counterparties of Transferred Contracts are forever barred and permanently enjoined from raising or asserting against either the Debtors or the Buyer any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to the Transferred Contracts (other than those subject to aan Adequate Assurance and Cure Objection) existing as of the Closing Date or arising by reason of the Closing.

34. 30. The failure of the Debtors or the Buyer to enforce, at any time, one or more terms or conditions of any Transferred Contract shall not be a waiver of such terms or conditions, or of the Debtors' or the Buyer's rights to enforce every term and condition of the Transferred Contract.

35. 31. Pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of the Transferred Contracts shall not be a default thereunder. After the payment of the

relevant Cure Amounts as required by the APA and this Order, the Debtors shall not have any further liabilities to the Contract Counterparties for periods on or prior to the applicable Assumption Effective Date, and the Contract Counterparties shall be estopped from asserting any and all such Claims or Liens, whether known or unknown, against the Debtors on account of the Transferred Contract.

36.  ~~32.~~ Any provision in any Transferred Contract that prohibits or conditions the assignment of such Transferred Contract to the Buyer or its designee or allows the party to such Transferred Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Transferred Contract to the Buyer or its designee, shall constitute anti-assignment provisions that are unenforceable and will have no force and effect solely with respect to assumption and assignment pursuant to this Order or any subsequent assumption and assignment order, as applicable. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Transferred Contracts have been satisfied.

37.  ~~33.~~ Upon the applicable Assumption Effective Date and the payment of the relevant Cure Amount, if any, the Buyer or applicable designee shall be deemed to be substituted for the Debtors as a party to the applicable Transferred Contract and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under such Transferred Contract.; *provided, however,* that any landlord may seek to recover from the Debtors (but not the Buyer) indemnification obligations, if any, arising from third-party claims asserted with respect to or arising from the Debtors' use and occupancy of the Premises prior to the Closing for which the Debtors had a duty to indemnify such Landlord pursuant to any Transferred Contract, solely with respect to available insurance coverage that survives the Closing, if any; *provided,*

*further*, that the Buyer shall not have any obligations to reimburse or indemnify the Debtors or the Debtors' insurer for any such recovery.

38. 34. Upon the applicable Assumption Effective Date) and the payment of the relevant Cure Amount, if any, the Transferred Contracts will remain in full force and effect (subject to any amendments agreed to between the counterparty to such Transferred Contract and the Buyer), and no default shall exist under the Transferred Contracts and no counterparty to any Transferred Contract shall be permitted (a) to declare a default by the Buyer or its designee under such Transferred Contract as a result thereof, or (b) to otherwise take action against the Buyer or its designee as a result of any Debtors' financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Transferred Contract. Each non-Debtor party to any Transferred Contract hereby is also forever barred, and estopped, and permanently enjoined from (i) asserting against the Debtors or the Buyer, or the property of any of them, any default or Claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the applicable Assumption Effective Date, or, against the Buyer, any counterclaim, defense, setoff, or any other Claim asserted or assertable against the Debtors, except as otherwise provided in this Order, and (ii) imposing or charging against the Buyer or its affiliates any rent accelerations, assignment fees, increases (including advertising rates), or any other fees as a result of the Debtors' assumption and assignments to the Buyer of the Transferred Contracts.; *provided, however*, notwithstanding anything to the contrary in the APA or this Order, Buyer or its designee shall be responsible for liabilities for any breach of or default under such Transferred Contract arising or occurring after the Closing Date, and for payment or performance of any and all obligations under the Transferred Contracts when due in accordance with the terms of such Transferred Contracts, including with respect to any year-end adjustments or reconciliations

(including for royalties, rents, utilities, taxes, insurance, fees, common area or other maintenance charges, promotional funds, and percentage rent) that become due and owing after the Closing Date (irrespective of whether such obligations accrued or relate to the period before, on or after the Closing Date, and were not due and unpaid as of the date of the Cure Notice so as to be required to be raised by a timely objection to the Cure Notice); *provided*, *further*, without relieving Buyer of its obligations under this Order or the APA, nothing in this Order or the APA shall relieve the Debtors of their obligations to lease counterparties of unexpired leases under Section 365(d)(3) of the Bankruptcy Code prior to and through the effedtive date of any assumption and assignment or rejection of any Transferred Contract or Potential Contract, as applicable.

39.    35. Other than the Adequate Assurance and Cure Objections, all objections to the assumption and assignment of the Transferred Contracts that have not been withdrawn, waived, settled, or adjourned, as announced to the Court at the Sale HearingHearings or by stipulation filed with the Court, and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice.

40.    36. All Contract Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Buyer, any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the assumption and assignment of the applicable Transferred Contract in connection with the sale of the Purchased Assets.

**Taxing Authorities**

37. The tax liens of Bexar County, Dallas County, City of El Paso, City of Frisco, Gregg County, Harris County, Hidalgo County, Irving Independent School District, Lewisville Independent School District, City of McAllen, Montgomery County, Nueces County, Smith

County, Tarrant County, City of University Park, Highland Park Independent School District, Richardson Independent School District, City of Highland Village, Carrollton-Farmers Branch Independent School District, Frisco Independent School District, Plano Independent School District, Tyler Independent School District, Spring Branch Independent School District, Harris County Municipal Utility District #345, Memorial Villages Water Authority, Denton County and Williamson County (the "**Texas Taxing Authorities**"), if any, whether for prepetition or postpetition taxes, shall attach to the proceeds of the sale of any of the Debtors' assets located in the State of Texas to the same extent and with the same priority as such tax liens attached to such assets immediately prior to the closing of such sale, and the Debtors shall not disburse any sale proceeds to creditors with liens junior to the Texas Taxing Authorities from any sale of assets subject to a valid, first priority lien of any Texas Taxing Authority without first establishing a reserve for any such tax liens. The rights of any party to contest the validity, priority, or enforceability of any purported lien of any Texas Taxing Authority are reserved.

41.     For the avoidance of doubt and notwithstanding anything to the contrary in this Order or the APA, the secured ad valorem tax liens (the "**Tax Liens**") of the Texas Taxing Authorities[6] pertaining to the Purchased Assets, are Permitted Liens as defined in the APA. The Buyer assumes full responsibility for the Texas Taxing Authorities' ad valorem tax claims (the "**Tax Claims**") for tax years 2023 and prior pertaining to the Purchased Assets and shall be responsible for paying the Tax Claims, including any accrued post-petition interest, in full, in the

---

[6]     Bexar County, Dallas County, City of El Paso, City of Frisco, Gregg County, Harris County, Hidalgo County, Irving Independent School District, Lewisville Independent School District, City of McAllen, Montgomery County, Nueces County, Smith County, Tarrant County, City of University Park, Highland Park Independent School District, Richardson Independent School District, City of Highland Village, Carrollton-Farmers Branch Independent School District, Frisco Independent School District, Plano Independent School District, Tyler Independent School District, Spring Branch Independent School District, Harris County Municipal Utility District #345, Memorial Villages Water Authority, Denton County and Williamson County.

ordinary course of businesses, when due. If not timely paid, the Texas Taxing Authorities may proceed with non-bankruptcy collections against the Buyer, without leave or approval of the Court. The Texas Taxing Authorities shall retain their Tax Liens against the Purchased Assets, as applicable, until paid in full, including any applicable penalties or interest. All parties' rights to object to the priority, validity, amount and extent of the Tax Claims and Tax Liens are fully preserved.

**Back-Up Bidder**

42. ~~38.~~ The Designated Back-Up Bidder is Corbak Acquisition, LLC ("**Corbak**"). Corbak is hereby approved as the Back-Up Bidder, and its bid is hereby designated as the Designated Back-Up Bid and approved and authorized as the Back-Up Bid. The Designated Back-Up Bid shall remain open as per the terms of the Designated Back-Up Bid and the Bid Procedures. In the event the APA is terminated pursuant to its terms and the sale of the Purchased Assets to the Buyer is not consummated, then the Designated Back-Up Bidder will be deemed the Successful Bidder in accordance with the ~~Bidding~~Bid Procedures and all references herein to the Buyer and the APA shall be to the Designated Back-Up Bidder and the Designated Back-Up Bid, respectively, without further order of this Court. In such case the findings and other provisions of the Order shall apply to the Designated Back-Up Bidder and the Designated Back-Up Bid to the same extent that they apply to the Buyer and the ~~Asset Purchase Agreement.~~APA. Notwithstanding the foregoing, with respect to any Transferred Contracts or Potential Contracts, pursuant to the Bid Procedures Order, the Debtors shall (1) file and serve a Notice of Intent to Proceed with Back-up Bid, and (2) schedule a telephonic status conference, which may be expedited, upon reasonable notice under the circumstances (which shall be no less than five (5) days), at which time a briefing and hearing schedule will be established for those landlords and counterparties to executory

contracts and unexpired leases to object to any proposed assumption and assignment of their leases or contracts to the Back-up Bidder.

### Closing Escrow

43. Pursuant to that certain *Sua Sponte Order Requiring SSCP Restaurant Investors, LLC to Escrow Purchase Price as Condition Precedent to Closing Sale Transaction Under Sale Order* entered contemporaneously herewith, or such further order as may be entered by this Court or a court of competent jurisdiction in connection with the subject matter thereof, as a condition precedent to closing the Sale under the Sale Order and APA, SSCP shall deposit the sum of $11,499,065 (the "**Cash Escrow**") in escrow with [Wilmington Trust] and provide evidence of such deposit to the Committee, the Debtors, and the Office of the United States Trustee.

### Miscellaneous Provisions

44. 39. Notwithstanding anything to the contrary herein, the Debtors and Buyer shall comply with the Corner Bakery Privacy Policy dated December 27, 2029 and the Special Privacy Notice for California Residents dated December 27, 2019 (the "**Privacy Policies")** and: (a) with respect to information subject to the Privacy Rights of California ("**CCPA**") Seller shall not and hereby does not transfer, sell, or convey any "personal information" of California residents to Buyer for any Person; and (b) Seller shall not and hereby does not transfer, sell, or convey any "personal information" of Nevada residents to Buyer for any Person.

45. 40. Notwithstanding any term or provision in any pleadings, orders, or other documents related to the sale of Debtors' assets, taxes that are collected and held in trust for the State of Texas shall not be subject to the sale. Specifically, Texas sales taxes are such trust fund taxes. Whether collected pre- or post-petition, and whether on deposit at a financial institution or being held in cash, Texas sales tax trust funds are not property of the bankruptcy estate and cannot

be included in the sale of Debtors' assets. For the avoidance of doubt, all Texas sales tax trust funds collected following the Petition Date and prior to closing of the sale of Debtors' assets, but not yet remitted to the Texas Comptroller of Public Accounts, shall be paid by the Debtors in accordance with state law, 28 U.S.C. § 960 and all relevant sections of the Bankruptcy Code.

46. 41. Notwithstanding anything to the contrary in the Motion, the ~~Bidding~~Bid Procedures Order, the ~~Bidding~~Bid Procedures, the Assumption and Assignment Procedures, the APA, any Potential Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, Contracts Schedule or other list of Potential Assumed Contracts and/or Cure Amounts, this Sale Order or any documents relating to any of the foregoing, (a) nothing shall permit or otherwise effectuate a sale, an assignment or any other transfer of (i) any insurance policies that have been issued by ACE American Insurance Company, Westchester Fire Insurance Company and/or any of their U.S.-based affiliates and/or any predecessors and successors of any of the foregoing to, or that provide coverage to, any of the Debtors (or their predecessors) at any time and/or any agreements, documents or instruments relating thereto (collectively, the "Chubb Insurance Contracts"), and/or (ii) any rights, proceeds, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts; (b) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Insurance Contracts; and (c) for the avoidance of doubt, the Successful Bidder is not, and shall not be deemed to be, an insured under any of the Chubb Insurance Contracts.

47. 42. Upon the Closing, and unless otherwise specifically provided for herein or in the APA, those parties holding Encumbrances related to the Purchased Assets, following a commercially reasonable request of Buyer, are authorized and instructed to execute or authenticate such documents and instruments and take all other action as may be necessary to release such

Liens or mortgages on or security interests in the Purchased Assets, as may have been recorded or may otherwise exist. The Debtors are further authorized to execute such documents and instruments and take all other actions as may be necessary to effectuate the terms of the APA and this Order including such actions as may be necessary to comply with all regulatory and licensing requirements.

48. 43. The APA and any related or ancillary agreements, documents or other instruments may be further modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court; provided, that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates. The APA shall not be altered, amended, rejected, discharged, or otherwise affected without the prior written consent of the Debtors and the Buyer. Material modifications, amendments, or supplements may only be made in a signed writing by the Debtors and Buyer and upon further Order of this Court.

49. 44. Except as expressly provided in the APA, this Order, or any order of this Court, the Debtors and their estates shall have no further liability or obligations with respect to any Assumed Liability after Closing, except as to Potential Contracts, and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors or their estates.

50. 45. Absent the express written consent of the Buyer, the Debtors shall not settle or otherwise resolve any causes of action with any third party or any Governmental Authority other than any settlement pursuant to which (a) any Liability thereunder will be an Excluded Liability, (b) no payment from the Buyer is sought or required, and (c) no restrictions are placed on or affecting the Business or Purchased Assets.

51. 46. If any person or entity that has filed a mechanic's and/or materialmen's lien, deed of trust, mortgage, judgment lien, financing statement, or other document or agreement evidencing a lien, claim, encumbrance, or interest in, on, or against the Purchased Assets shall not have delivered to the Buyer at or prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims, encumbrances, or interests that the person or entity has against any of the Purchased Assets, the Debtors and the Buyer are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity after the occurrence of the Closing Date.

52. 47. Unless related to an Assumed Liability or Permitted Lien pursuant to sections 105(a) and 363 of the Bankruptcy Code, effective as of the Closing Date, all persons are hereby forever barred and estopped from taking any action against the Buyer or the Buyer' affiliates (as they exist immediately prior to the Closing) to recover or enforce any lien, claim, interest, or encumbrance, including any PACA Claims, that such Person has against the Purchased Assets as of the Closing Date.

53. 48. Except in connection with the Debtors' performance under the terms of any Transition Services Agreement or to effectuate the wind-down, neither the Debtors nor any of their affiliates shall use, license, or permit any third party to use any name, slogan, logo, or trademark which is similar to any of the names, trademarks, or service marks included in the Intellectual Property in the Purchased Assets, and each Debtor is directed to change its corporate name to a name which (a) does not use the name "Corner Bakery" or any other name that references or reflects any of the foregoing in any manner whatsoever, (b) is otherwise substantially dissimilar to its present name, and (c) is approved in writing by the Buyer. Within a reasonable time after the

Closing Date, the Debtors shall file a separate motion seeking to modify the case caption to reflect the Debtors' new corporate name.

54. 49. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified, lifted, and annulled with respect to the Debtors and the Buyer to the extent necessary, without further order of this Court, to (a) allow the Buyer to deliver any notice provided for in the APA, and (b) allow the Buyer to take any and all actions permitted under the APA or any other Sale-related document in accordance with the terms and conditions thereof. The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other Sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence.

55. 50. The transactions authorized herein shall be of full force and effect, regardless of any Debtors' lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

56. 51. In the event of any inconsistency between this Order and the APA, this Order governs. The failure to include any particular provision of the APA or the related agreements in this Order will not diminish the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

57. 52. Nothing contained in any subsequent plan of reorganization or liquidation that may be confirmed in the Bankruptcy Case or any order of this Court confirming such plan shall conflict with the terms of this Order.

58. 53. The provisions of this Order are non-severable and mutually dependent.

59. 54. The entry of this Order is in the best interests of the Debtors, their estates, the creditors and other stakeholders thereof and other parties in interest.

60. 55. This Order shall become null and void if the Closing does not occur as provided for in the APA or if the Buyer fails to pay the Purchase Price as provided for in the APA.

61. 56. For the avoidance of doubt, nothing in this Order shall impact the effectiveness of any previously entered orders regarding the Debtors' use of cash collateral and incurrence of debtor-in-possession financing.

62. 57. This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto as well as any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party and adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

63. 58. For cause shown, this Order is effective and enforceable immediately and its provisions are self-executing upon entry notwithstanding any provision in the Bankruptcy Code, the Bankruptcy Rules, including, without limitation, Bankruptcy Rules 6004(h), 6006(d), or any other applicable provision under the law.

**Exhibit A**

**ASSET PURCHASE AGREEMENT**

**Exhibit B**

**TRANSITION SERVICES AGREEMENT**

| Summary report: | |
|---|---|
| **Litera® Change-Pro for Word 10.14.0.46 Document comparison done on 6/5/2023 12:57:09 PM** | |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4881-4034-5447/2/CBC - Proposed Sale Order (SSCP Bid).doc | |
| **Modified DMS:** nd://4881-4034-5447/8/CBC - Proposed Sale Order (SSCP Bid).doc | |
| **Changes:** | |
| Add | 322 |
| Delete | 193 |
| Move From | 8 |
| Move To | 8 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 531 |